## P. E. Hannum, Hannah W. Eavenson, Benjamin Eavenson and Morris L. Eavenson *v.* J. D. C. Pownall, Appellant.

*Evidence—Unresponsive answer—Trial—Practice, common pleas.*

Where a party allows an unresponsive answer to remain without objection and without any request to strike it off, and takes the chance in cross-examination of developing something favorable to his contention, he has no standing to object that the testimony was improperly admitted.

In interpleader proceedings a wife claimed property which had been levied upon as the property of her husband. She averred that she had received $1,000 from the widow of her uncle as compensation for nursing him, and that the widow had obtained the money from her husband's estate. The attorney for the widow's estate was asked to state upon his own knowledge whether the widow had received $1,000 from the estate of her husband. He answered that the widow had told him that she had received the money, and that she had given it to her niece. No request was made to strike out the answer. *Held,* that the defendant had no standing to object that the testimony was improperly admitted.

Argued May 16, 1898. Appeal, No. 443½, Jan. T., 1897, by defendant, from judgment of C. P. Lancaster Co., Jan. T., 1896, No. 97, on verdict for plaintiffs. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Sheriff's interpleader to determine the title to personal property. Before LIVINGSTON, P. J. See 182 Pa. 587.

At the trial, Hannah W. Eavenson, one of the plaintiffs, alleged that she had a separate estate, and that with this she had bought the property in dispute.

She testified that she received money from her uncle and her uncle's widow as compensation for nursing her uncle. She further testified:

" Q. All this personal property you claim, this household and kitchen furniture you have described, was either given to you by your father or was furniture that had replaced furniture that had been worn out that you got from your father? A. Yes, sir, the furniture that had been replaced. Q. You say none of it had been in your possession—none had come into your possession within the last ten years preceding the execution—you had it all prior to that? A. No, I don't think there was any got within ten years; I have no recollection of any. Q. If any had been bought by your husband please state whether he gave it to you to replace what had been worn out."

Objected to by defendant. Admitted. Defendant excepts.

" Q. Please state whether or not he had given it to you to replace what was worn out. A. Yes, sir, he gave it to me." [1]

When E. M. Gilbert, Esq., a witness for plaintiffs, was on the stand, after testifying that he was the executor of the will of Mary Eavenson, the widow of Benjamin Eavenson, plain tiff's uncle, he testified:

" Q. Before she died, if you know, did she get $1,000 that belonged to her husband who had made his home with Reese Eavenson? A. Yes, sir. I will just explain how she got it. Q. If you know. Just give us your own knowledge.

Objected to by defendant. Admitted. Defendant excepts. [2]

" A. Mary Eavenson died some time last winter, and she lived at my father's house for a number of years before she died. She told me that when her husband died in 1883 she inherited from him $1,000, and that she gave that to Hannah W. Eavenson for taking care of him."

No request was made to strike out this answer but on the contrary defendant's counsel cross-examined the witness.

The court charged in part as follows:

This is what is called a feigned issue under the interpleader act, to ascertain whether certain property levied on by Mr.

Pownall as the property of Reese Eavenson, was his property at the time of the levy or not. The property has been claimed here as the property of Hannah W. Eavenson, his wife.

As you have been told the case has been here before, and on that trial the court did not allow them to ask the lady any questions at all. She presented her deed here and we considered that sufficient. It was carried up to the Supreme Court and the Supreme Court say we were in error, because it was a fight between the woman and the husband's creditors. If it had been a question between the woman herself and a stranger our judgment would have been right. It comes back here for the purpose of permitting her to show whether or not she had any money in this farm, any money of her own to put into it at the time it was purchased, prior to the making of his levy.

You will remember the testimony. She bought this property in 1891 and the deed was made in 1892. You will remember at that time, or before that time, her husband had made an assignment for the benefit of creditors. His property had been sold and purchased by another party and it was from the other party she purchased, not from him or through him.

Now, the Supreme Court say that if a question arises between Mrs. Eavenson and strangers, then the rule I adopted would have been correct; but where it was raised between her and the creditors of her husband, who sought to sell the property as his, they say she should show by clear proof two things : first, the question of an estate of her own, not derived from her husband, and second, a bona fide purchase by herself of the farm with or upon the credit of such separate estate. She was relieved, it says, of both of these by me on the former trial.

Now, had she in the first place any separate estate ? You have heard what she has said and her testimony seems to be uncontradicted. She was put through a very rigid examination and cross-examination. Had she at the time she purchased this property any separate estate or money of her own ? The amount is not material. If she had a separate estate of her own or money of her own which went into this, then she would have a right to buy. She has told you she had $1,000 of her own money. She has told you where she obtained it and how she obtained it and what it was for. Mr. Slocum has told you, I-think, in his testimony, that she paid $1,000. She said she

lent this to her husband when she got it first, and he used it. Before he broke up, before he chose assignees he paid her the $1,000 he had borrowed from her, without interest. Now complaint has been made because he did that. That he had a perfect right to do. He could have and did pay her, if you believe what she says, shortly before he broke up. He preferred her as he had a right to do, and no other creditor has a right to complain; and if you believe she got the money, as she says she did, and lent it to him, and he paid it to her again before he made the assignment and she appropriated it to the purchase of this property, the transaction would be proper.

[Did she do that? Do you believe she has told you the truth? It is said she is uncorroborated. If you believe she has told you the truth then she needs no corroboration. She afterwards called Mr. Gilbert, her counsel, who left the case and testified. You heard his testimony. All this testimony is for you to say whether you believe it or not. If you believe she did get this money and purchased this farm as her own—if she has shown you that beyond a reasonable doubt, then your verdict should be, as counsel of the parties tell you it should be, in her favor, for the plaintiff.] [3]

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions; (3) above instructions, quoting them.

*T. B. Holahan*, of *Martin, Holahan & Alexander*, and *J. W. Johnson*, for appellant.—It is incumbent upon the wife to prove her title by evidence which does not admit of a reasonable doubt: Gamber v. Gamber, 18 Pa. 363; McDermott's App., 106 Pa. 358; Shober v. Harrison Bros. & Co., 3 Pa. Superior Ct. 188; Winter & Hartman v. Walter, 37 Pa. 155; Rhoads v. Gordon, 38 Pa. 277; Flick v. Devries, 50 Pa. 266; Curry v. Bott, 53 Pa. 400; Bower's Appeal, 68 Pa. 126; Lochman and Wife v. Brobst, 102 Pa. 481; Leinbach v. Templin, 105 Pa. 522; Blum v. Ross, 116 Pa. 163: Adams v. Bleakley, 117 Pa. 283; Steckman v. Schell, 130 Pa. 1.

*W. U. Hensel*, of *Brown & Hensel*, with him *E. M. Gilbert*, for appellant, cited Cummings's App., 11 Pa. 272; Barr v. Green-

awalt, 62 Pa. 172; Phillips v. Hall, 160 Pa. 60; McDevitt v. Vial, 11 Atl. Rep. 645; Hinney v. Phillips, 50 Pa. 382; Bergey's App., 60 Pa. 408; Tate v. Carney, 14 Atl. Rep. 327.

OPINION BY MR. JUSTICE FELL, July 21, 1898:

The action was a feigned issue under the sheriff's interpleader act to determine the title to personal property levied on by the sheriff. One of the claimants was the wife of the execution debtor, and the controversy relates entirely to her claim. At the trial she was held to strict proof of the acquisition, in good faith and in her own right, of the property in question, by means of her ownership of a separate estate. The testimony presented by her was sufficient to take the case to the jury, and we find no error in the charge.

The second specification of error is the only one which presents any difficulty. The case turned upon proof by the plaintiff that she was the .owner in her own right of $1,000, which was paid on account of the purchase money of the farm on which she lived with her husband. She testified that she had received this money from the estate of an uncle whom she had nursed, and that a part of it was in payment of her charge for services, and the balance, a gift from his widow, Mrs. Eavenson. In corroboration of her testimony the attorney who had represented the estate was called and asked whether he knew that Mrs. Eavenson, who had since died, had received $1,000 from her husband's estate, and was cautioned to state only what he knew of his own knowledge. This question was objected to, and the witness answered that Mrs. Eavenson had told him that she inherited $1,000 from her husband and gave it to the plaintiff for having cared for him. The plaintiff might have shown in connection with proof of actual payment the circumstances under which payment was made and the inducement which lead to it, but the fact that Mrs. Eavenson had the money with which to pay was not in itself ground for the inference that she had paid. As no explanation was made of the purpose of asking this question, it would have been better to have sustained the objection to it, but the part of the answer which was responsive to the question was harmless. The statement by the witness that Mrs. Eavenson had told him that she had given the money to the plaintiff was hearsay, and not admissible as evidence. It was

not responsive to the question asked, and no doubt would have been struck out, on request, by the court. But the defendant did not ask to have it struck out, but proceeded to cross-examine in relation to it, and thus developed the subsequent testimony which was most harmful to his case, if any harm was done by it. Having allowed the unresponsive answer to remain without objection, and having taken the chance in cross-examination of developing something favorable to his contention, the defendant has no standing to object that the testimony was improperly admitted.

The judgment is affirmed.