# Luckett v. Reighard, Appellant.

*Negligence — Automobiles — Master and servant—Employee of garage—Returning car to garage—Scope of employment—Deviation from route—Case for jury—Trial—Admission of hearsay without objection—Motion to strike out.*

1. In an action against a garage owner to recover damages for personal injuries sustained by the negligent operation of an automobile while being driven by defendant's employee, who was returning the car to the garage after having taken its owner to his home, the case was for the jury and a verdict for the plaintiff will be sustained where the evidence was conflicting as to whether the sum paid monthly by the owner of the car to the garage keeper included payment of services of defendant's employees in driving the car to and from its owner's home, and where, at the time of the accident, the deviation from the direct route of return to the garage was not so great as to warrant the conclusion of law that defendant's employee was acting outside the scope of his employment.

2. Where on the trial of such case the owner of the car testified as to a matter which was purely hearsay, and the question when asked was not objected to and no motion was made then or immediately after the cross-examination of the witness to strike his answer from the record, the court did not err in refusing to strike such answer from the record the following day of the trial after the defendant had moved for a nonsuit, and opened his case to the jury and in permitting such testimony to be considered by the jury.

3. In an action to recover damages for injuries received by being struck by an automobile, the plaintiff must show that the relation of master and servant existed between the defendant and the person in charge of the car at the time of the accident, that the servant was engaged in his master's business, and was acting within the scope of his employment at the time the tortious act was committed resulting in injury to the plaintiff. The servant must not only be engaged in and about his master's business, but must be acting within the scope of his employment in operating the machine, to impose liability upon the master. The master, however, may not be relieved of liability for the tortious act of his servant when acting for him in furthering his business, although he is acting contrary to instructions and the act was done by the servant at a place to which the performance of his duty did not necessarily call him. The master is responsible for the negligent

acts or omissions of his servants in the course of their employment, though unauthorized or even forbidden by him, and although outside of their line of duty and without regard to their motives.

Argued Oct. 21, 1914. Appeal, No. 157, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., First T., 1910, No. 415, on verdict for plaintiff in case of Robert Luckett v. Samuel S. Reighard, Charles A. Lytle and John W. Westhead, executors and trustees under the last will of D. P. Reighard, Deceased. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SWEARINGEN, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $6,000 and judgment thereon. Defendants appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment non obstante veredicto.

*David E. Mitchell,* of *Griffith & Mitchell,* for appellants.

*Thomas M. Marshall, Jr.,* with him *Thomas M. Marshall,* and *Victor J. Levy,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

This is an action to recover for personal injuries sustained by the plaintiff by being struck by an automobile on Center avenue at the corner of Melwood street, in the City of Pittsburgh, and was brought against D. P. Reighard and another, formerly doing business as the Globe Garage and Repair Company which conducted a garage in Pittsburgh. Subsequently the name of the

other party was stricken from the record and Mr. Reighard having died, his executors were substituted as defendants.

About ten o'clock on the evening of September 5, 1909, the plaintiff having alighted from an open trolley car on Center avenue at the corner of Melwood street started to go to the sidewalk and was struck and injured by an automobile coming from the rear of the trolley car and running at a negligent and reckless rate of speed. The plaintiff testified that when he was about to alight from the car he looked both to the front and rear to see if any vehicle was coming on the side of the car on which he alighted, and did not see an automobile or any other vehicle aproaching from either direction.

The plaintiff claims, and introduced evidence on the trial of the cause to show, that one F. L. Schmeltz, was the owner of the machine which struck and injured him, and that the machine was then in charge of and being operated by a chauffeur or servant of the defendant. Mr. Schmeltz was called as a witness and testified that for a year previous to the accident he kept his machine at the defendant's garage under a verbal contract by which "they were to store my car and wash and polish it every night, and if I drove around to the garage in the evening they would furnish a man to take the car up to my house and bring it back to the garage for me, and in the morning they would send a man up to my house with the car." He paid the defendant a certain monthly sum for this service which as he alleged, included the services of an employee for taking the car from the garage to his residence and bringing it back. He did not employ those who performed this service and did not pay them. He further testified that he was the owner of the machine which struck and injured the plaintiff. On the evening of the accident, according to his testimony, he called at the garage in his machine at about 8:45, picked up an employee of the defendant engaged there by the name of Carter and known as "Big Bill," and then drove

on to his residence where he alighted and left the car with Carter to be returned to the garage. He thinks it would have taken about fifteen minutes to reach his home from the garage and that, therefore, Carter started for the garage about nine o'clock.

It will be observed the plaintiff does not claim that the defendant was the owner of the machine which injured him. The defendant denies that at the time of the accident the machine was in charge of or being operated by his servant, and alleges that if the automobile which struck the plaintiff was in charge of a person employed by the defendant he was not acting at the time of the accident within the scope of his employment. The defendant called Ralph R. Nolan as a witness and it appeared that he was the defendant's manager at the garage during the time Mr. Schmeltz's car was stored there. He testified, and Mr. Schmeltz admitted, that he made the contract with the latter for the storage of his machine at the garage, and that he agreed to store the car in the garage and wash and polish it for a stipulated sum per month. He says that Mr. Schmeltz asked him in addition to storing the car to deliver the car at his home and return it to the garage but he declined to do so, and denies that he agreed to furnish a man from the garage to run the car between the garage and Mr. Schmeltz's home. He admits that there was an arrangement between himself and Schmeltz that the latter "through his own arrangements could use one of" the employees, if the employee was not busy, to bring the car back to the garage from Mr. Schmeltz's residence, but, that it was understood that Schmeltz was to pay the employee for such service. He further testified that Carter had been employed at the garage for about six months prior to the accident and that his duties were to wash and polish cars.

The learned judge of the court below submitted the case in a clear and adequate charge. He told the jury that before the plaintiff could recover he must satisfy

them that it was Mr. Schmeltz's car under the control of Mr. Reighard which struck the plaintiff, that the driver was engaged at the time of the accident in the business of Mr. Reighard, that the driver was negligent, and that the negligence was the sole cause of the injury to the plaintiff. The jury found for the plaintiff, and the defendant has taken this appeal from the judgment entered on the verdict. The first two assignments allege error in the court refusing to direct a verdict for the defendant and in not entering judgment for the defendant notwithstanding the verdict. The third assignment alleges error in a portion of the charge, and the fourth alleges that the court erred in refusing to strike out certain testimony of the plaintiff. We will consider these assignments in their inverse order.

When Mr. Schmeltz was on the stand and after he had testified that it was his car which struck and injured the plaintiff, it appeared by his cross-examination that he had learned the fact the morning after the accident from Carter, the chauffeur. There was no objection to the testimony when it was offered and admitted. The trial of the case continued during the balance of the day and after the plaintiff had closed in the evening the defendant moved for a compulsory nonsuit. This was refused and counsel opened for the defendant. The court then adjourned until the following morning. When it reconvened the next day counsel for the defendant moved to strike from the record "the testimony of Mr. Schmeltz in which he stated that on the morning after the accident 'Big Bill,' the chauffeur, brought his car to his home and that he learned from him that the accident had happened and all the details of it, for the reason that such testimony is incompetent, immaterial and irrelevant and based upon hearsay." Counsel for the plaintiff objected to striking out the testimony for the reason the witness had left the court, and counsel did not know that was all his testimony on the

subject and the witness appeared to have had the information from other sources.

While the motion does not ask that the testimony of Mr. Schmeltz, that he was the owner of the machine, should be stricken from the record, it was no doubt so intended. The motion as disclosed by the record, merely shows that it was to strike out that part of Schmeltz's testimony showing the source of the information on which he relied for the statement that he was the owner of the machine. We recognize the materiality of this testimony and that without it the plaintiff would have had great difficulty in sustaining his cause of action. We think, however, that the learned court below did not err in refusing to strike the testimony from the record. It was certainly apparent to the defendant's counsel when Mr. Schmeltz testified he was the owner of the machine which struck the plaintiff, that he was not testifying from his own personal knowledge. The counsel knew that the statement averred that Reighard's employee was operating the automobile, that there was no allegation that Mr. Schmeltz was with the machine at the time of the accident, and that, therefore, Mr. Schmeltz could have no personal knowledge that the machine which inflicted the injury belonged to him. The defendant, however, made no objection when the question was asked and made no motion then or after the witness's cross-examination to strike it and the answer from the record. He permitted the plaintiff to call his other witnesses and close, made a motion for a compulsory nonsuit upon the evidence then before the court, opened his case to the jury and did not make his motion to strike the testimony from the record until the next day. Under the circumstances, the motion to strike out came too late: McCullough v. Railway Mail Assn., 225 Pa. 118. There is little doubt if a proper motion to strike Schmeltz's testimony from the record had been made promptly, the court would have granted it. The defendant manifestly thought the testimony

harmless and willing that it should be admitted, as he made the motion for a nonsuit before he asked that the testimony be stricken from the record. Had the motion been promptly made and granted, the plaintiff then would have had an opportunity to introduce other testimony to prove the same fact and would not have relied upon Schmeltz's testimony, and possibly would have conducted his case on a different theory. If the motion had been granted at the time it was made which was after the plaintiff had closed his case, the defendant had opened his case, and the court had convened for the next day's session, it would have deprived the plaintiff of testimony necessary to sustain his action without affording him an opportunity to prove the fact by other and competent testimony. If such opportunity had been given it would practically have resulted in a retrial of the cause on the part of the plaintiff. As shown by the plaintiff's objection made to the motion, the witness had left the court and the plaintiff was not prepared to prove at that time by other testimony the same fact which he regarded as an essential element in his case. While the circumstances in Hannum v. Pownall, 187 Pa. 292, are not entirely similar to those in the present case, yet the language of the present Chief Justice in that opinion is not entirely inappropriate here. He says (p. 296): "The statement by the witness that Mrs Eavenson had told him that she had given the money to the plaintiff was hearsay, and not admissible as evidence. It was not responsive to the question asked, and no doubt would have been struck out, on request, by the court. But the defendant did not ask to have it struck out, but proceeded to cross-examine in relation to it, and thus developed the subsequent testimony which was most harmful to his case, if any harm was done by it. Having allowed the unresponsive answer to remain without objection, and having taken the chance in cross-examination of developing something favorable

to his contention, the defendant has no standing to object that the testimony was improperly admitted."

The third assignment alleges error in that portion of the charge in which the court directs attention to the fact that Mr. Schmeltz had testified he was the owner of the car which struck the plaintiff. There is no merit in this assignment. The testimony was before the court and the jury, and it was not only proper, but it was the duty of the court to direct the jury's attention to it. We have sustained the court's refusal to strike it from the record, and it was, therefore, competent testimony and to be considered by the jury.

The first and second assignments raise the important and controlling questions whether there was any evidence in the case which warranted the jury in finding that at the time of the accident the automobile was in charge of the defendant's servant, and, if so, he was acting within the scope of his employment. Both of these questions must be answered in the affirmative before the plaintiff can recover. He must show that the relation of master and servant existed between the defendant and the person in charge of the car at the time of the accident, that the servant was engaged in his master's business and was acting within the scope of his employment at the time the tortious act was committed resulting in the injury to the plaintiff. The servant must not only be engaged in and about his master's business, but must be acting within the scope of his employment in operating the machine, to impose liability upon the master. The test of liability is whether the servant at the time of the plaintiff's injury was acting within the scope of his authority in furtherance of his master's business. The master, however, may not be relieved of liability for the tortious act of his servant when acting for him in furthering his business, although he is acting contrary to instructions and the act was done by the servant at a place to which the performance of his duty did not necessarily call him. The master is responsible

for the negligent acts or omissions of his servants in the course of their employment, though unauthorized or even forbidden by him, and although outside of their "line of duty," and without regard to their motives: 1 Shear. and Red. on Negligence (6th Ed.), Sec. 146; Moon v. Matthews, 227 Pa. 488; Marcus v. Gimbel Bros., 231 Pa. 200; Penas v. Chicago, Milwaukee & St. Paul Ry. Co., (Minn.) 30 L. R. A. (N. S.) 627.

We think the evidence was sufficient to show that the machine was being operated by the defendant's servant at the time the plaintiff was injured. It is conceded that Schmeltz's machine, which collided with the plaintiff, was stored at the defendant's garage. The witnesses disagree as to the terms of the contract between Schmeltz and the defendant by which the latter was to store the machine. The question was submitted to the jury and they found in effect that the defendant was not only to store the machine but was to furnish an employee to run the machine between the garage and Schmeltz's home. While the employee was performing this duty, especially in the absence of the owner, he was manifestly not the servant of Schmeltz but of the defendant who employed him and paid him for the service. He was under the defendant's control and was subject to his orders and directions. When the machine was being returned to the garage from the Schmeltz residence by the employee on the night of the accident, it was as much in the custody of the defendant, as when it was stored in the garage. While the employee, therefore, was operating the machine between those two places he was doing so in furtherance of the business of his employer who was responsible for his acts. If it were the duty of a night watchman at a garage, says the court in Fireman's Fund Insurance Co. v. Schreiber, 150 Wis. 42, 45 L. R. A. (N. S.) 314, 326, to deliver a customer's machine to him at his house upon call therefor, and in responding to such a call, he carelessly or

wantonly injured the machine, the wrong would be one within the scope of his employment.

From Schmeltz's testimony, the jury would have no difficulty in finding that Carter, the defendant's servant, accompanied Schmeltz home on the evening of the accident for the purpose of bringing the car back to the garage. They arrived at the Schmeltz residence about nine o'clock and Carter immediately started back with the car. The accident to the plaintiff occurred about ten o'clock that evening. There is nothing in the evidence to show that the car had been returned to the garage at the time of the accident. The garage is about twelve blocks distant from the place where the plaintiff was injured, and the Schmeltz home was about fifteen minutes' run with an automobile from the garage. When the car left the Schmeltz residence at nine o'clock that evening it was in charge of, and being operated by, the defendant's servant who was acting in the line of his employment, and in about one hour later it collided with the plaintiff on one of the public thoroughfares of the city. We think the presumption arises that Carter was still operating the car at the time it struck the plaintiff. His duty required him to return the car to the garage and, in the absence of evidence showing the contrary, we must assume that he was in the performance of that duty and in charge of the car when it was going in the direction of the garage at the time of the accident. There is no question that Carter was an employee of the defendant, engaged at the garage, and that he had frequently taken the car to the Schmeltz home and returned it to the garage. We think, therefore, the jury under the evidence was justified in finding that the automobile which injured the plaintiff was in charge of, and being operated by, the defendant's employee at the time of the accident.

The defendant further contends that if his employee was in charge of the car which struck the plaintiff, he was not at that time acting within the scope of his em-

ployment. The defendant supports this contention by pointing to the testimony which shows that it only required fifteen minutes over the direct route to take the machine from the Schmeltz residence to the garage, and that the accident did not occur until more than an hour after the chauffeur started to make the return, and further that the machine at the time of the accident was coming from the direction of the city, and not from the direction of the Schmeltz home. Conceding the truth of this testimony, we do not think it sufficient to warrant the court in saying as a matter of law that the chauffeur was not acting in the scope of his employment when he was running the machine on Center avenue, and it struck the plaintiff. There is nothing outside of this evidence which would warrant an inference that the chauffeur had gone on an errand of his own or was operating the car for his own pleasure at the time of the collision with the plaintiff. The facts shown by the testimony just referred to are not necessarily inconsistent with the contention of the plaintiff that the chauffeur was taking the car to the garage, as his duty required him to do, when he struck the plaintiff. The deviation from the direct route by the chauffeur or the time elapsing between his departure for the garage and the accident was not so great, as to necessarily warrant the conclusion that he was acting outside the scope of his employment. He might have been detained by an accident to his car, or by stopping to assist a fellow-chauffeur in trouble, as is quite customary, or the direct route might have been obstructed by the condition of some of the streets which required him to go a circuitous route. These and other reasons will at once suggest themselves why the chauffeur might be in the discharge of his duty in returning the car to the garage at the time the accident occurred.

We have carefully examined all the questions raised by the assignments, and are not convinced of any reversible error in the record.

The judgment is affirmed.