## Scheel, Appellant, *v*. Shaw.

*Negligence—Master and servant—Liability of master for servant's tort—Automobile accident—Scope of chauffeur's employment—Binding instructions for defendant.*

1. In an action to recover damages for injuries resulting from an automobile accident, it is necessary for plaintiff to prove not only that defendant was the owner of the car and that the driver was his servant, but that such servant was at the time engaged in the master's business. The test of liability is whether the servant at the time of the plaintiff's injury was acting within the scope of his authority in furtherance of his master's business.

452          SCHEEL, Appellant, *v.* SHAW.

2. Where it appears in such case that, at the time of the accident the chauffeur was engaged in the transportation of his own family, with the consent of his employer, and that at no time during the trip was he engaged in his employer's business, a verdict was properly directed for the defendant.

3. In such case the fact of the efforts of the owner of the car to relieve the sufferings of one injured cannot be made the basis of a legal liability unless by reason of some agreement or admission. The declarations of the servant made after the accident are not evidence against the master unless ratified by him.

Argued Jan. 6, 1916.   Appeal, No. 246, Jan. T., 1915, by plaintiff, from judgment of Superior Court, Oct. T., 1914, No. 232, affirming judgment of Municipal Court of Philadelphia, May T., 1914, No. 245, on verdict for defendant, in case of Johanna Marie Scheel v. Arthur E. Shaw.   Before Mestrezat, Potter, Stewart, Frazer and Walling, JJ.   Affirmed.

Appeal from Superior Court.

Kephart, J., filed the following opinion:

On the day of the accident the defendant and the chauffeur were out for a ride and on their return to the defendant's home, when the car was about to be taken back to the garage, the chauffeur, not regularly employed as such, requested the defendant to lend him the car to go for his family, some four miles away.   The permission having been granted, on the return trip with his family he struck and injured the plaintiff.   Not noticing the accident at the time, as it was very dark, he continued his journey to his home and when he was about to put the car in the garage, which was on his premises, his attention was directed to the condition of one of the headlights, from which he judged he had collided with some obstacle on his journey.   He spoke to the defendant about it and together they returned over the route, stopping at a point at which the chauffeur thought the car had received a jolt.   After walking a few squares they came to the house where the plaintiff had been taken,

suffering from an injury which she had received from an automobile. It is not contradicted that it was the defendant's automobile that caused the injury. The defendant had the plaintiff moved to the hospital, paying her expenses, etc., until her recovery. Suit having been brought for the negligent use of the car and a nonsuit having been entered in the court below, this appeal is from the refusal of the trial court to take off the nonsuit. Was the lending of the car to the defendant's chauffeur and his journey for his family within the scope of his employment?

As indicated in Blaker v. Philadelphia Electric Co., 60 Pa. Superior Ct. 56, the test, in cases where the servant uses a car, is the scope of his employment. In that case we said that the chauffeur was not acting within the scope of his employment when he was using the machine for his own pleasure or business; and therefore the owner was not liable for the injury caused by the chauffeur's negligent operation of the machine. In the case at bar the journey was taken by the chauffeur, with the permission of the master, on an errand solely for the benefit of the chauffeur. The fact that permission was given would not alter the rule as to the master's liability. The ownership of the car would not make the master liable: Lotz v. Hanlon, 217 Pa. 339. Where the master lends his servant to another to be engaged in the business of other persons, subject to their directions and control, the servant becomes a servant of the new master though he is paid by the old master: Rourke v. White Moss Colliery Co., L. R. 2 C. P. Div. 205. As an aid in determining whether, in doing a particular act, he is the servant of the master, the general inquiry is: "Was the act done in business of which the master is in control as a proprietor, so that he can at any time stop or continue it, and determine the way in which it shall be done, not merely in reference to the result reached, but in reference to the method of reaching the result, comprehending not only the general business which the act is intended to pro-

mote, but the particular business which calls for the act
in the smallest subdivision that can be made of the busi-
ness in reference to control and proprietorship? It would
not be contended that the lending of the car to a person
other than a chauffeur would make that person the serv-
ant of the master, and we cannot conceive upon what
theory this relationship exists, as the chauffeur, is for the
time being, constituted the owner of the car. It has been
stated as a general proposition that where the owner
of an automobile merely lends or hires it out to another
without more, he will not be liable for damages resulting
from its use while under the control of the borrower or
hirer: Hartley v. Miller, 33 L. R. A. (N. S.) 81. Cited in
support of this doctrine: Freibaum v. Brady, 143 N. Y.
App. Div. 220; 128 N. Y. Supp. 121; Lewis v. Amorous,
3 Ga. App. 50; 59 S. E. Repr. 338. The leading case on
the subject is Doran v Thomsen, 76 N. J. L. 754, which
was an action brought to recover damages for the negli-
gent operation of a motor vehicle which had been bor-
rowed from the owner. The court says: "An owner of a
vehicle is not liable for an injury caused by the negligent
driving of a borrower, if it was not used at the time in
the owner's business." Citing Herlihy v. Smith, et al.,
116 Mass. 265; N. Y., Lake Erie & Western R. R. Co. v.
N. J. Electric Ry. Co., 60 N. J. L. 338. Where the owner
of an automobile permitted his chauffeur and certain
companions to use it for pleasure and while so using it
the plaintiff was injured by the chauffeur's negligence,
the master was not liable: Davies v. Anglo-American
Auto Tire Co., 145 N. Y. Supp. 341. To the same effect
is Wyllie v. Palmer, 137 N. Y. 248. The owner of an
automobile is not liable for its negligent use to the in-
jury of a stranger by one to whom he had loaned it and
who was in complete control of its operation, although
the owner is, at the time of the accident present in the
machine as a guest: Hartley v. Miller, 130 N. W. Repr.
336. Nor where machine has been loaned to the owner's
brother: Parsons v. Wisner, 113 N. Y. Supp. 922. The

doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged.

The lending of the car to the chauffeur is a species of bailment without compensation. It is similar to the hiring and lending of horses and carriages. When a servant procures the loan of an animal from the master, the relationship of master and servant is for the time being dissolved, and if the servant appropriates the animal during the period of this dissolution he would be prosecuted criminally as a bailee. The analogy between the two classes of facts is very close. While the driver of an automobile must be skilled and licensed, this should not interfere with the application of the principles which control in the hiring of a vehicle. It needs no citation of authorities to sustain the proposition that, where one hires a carriage and through his negligent driving injury results, he and not the owner is responsible. In the case of hiring the owner receives a compensation for its use and is to some extent benefited by the contract of hiring. In borrowing or lending the owner receives no compensation for its use and is not benefited by the lending of the machine. When the chauffeur asked for permission to take the car for his family, the owner parted with the complete control of the car. The lending was unrestricted by instructions of any sort and unlimited as to time. The services of the chauffeur for the day for which he was temporarily employed had been completed when the accident happened. He was wholly at liberty from his master's engagement, pursuing his own business exclusively. The injury was inflicted before the journey upon which he went was completed, as he had not yet arrived at his home. He was in the act of bringing his family home. The lending of the car was not associated with the duties of a chauffeur. The fact that he was a long distance from the garage, returning with his family to his home and thence to the garage, would not have the effect of renewing the relationship of master and servant.

The special property he had in the car continues under his temporary ownership until, at least, for the purpose of this case, the time the accident happened; if not, until the car actually reached the garage.

Referring again to the close analogy as to the use of a carriage, attention is called to Bard & Wenrich v. Yohn, 26 Pa. 482. The son was in the employ of his father for wages. A fair was being held near their residence, and the son, for hire, paid to himself, drove certain persons to the fair with a team belonging to his father. The father did not forbid him to take the team or express any dissapprobation thereafter. Speaking of it the Supreme Court says, (p. 488): "Elijah was not in his father's employ when the act complained of was committed. He was neither acting for his father's benefit nor by his direction. There was no direct evidence that he took the horses to go to Reading with his father's consent. But the consent of the father, even if expressly given, would not have rendered him liable for injuries occasioned by his son's negligence. If one lets or hires to another a horse to be used exclusively for the purposes of the latter, the owner of the horse is in nowise responsible for the negligent manner in which the horse may be used. That Elijah was in his father's employ generally, did not create the relation of master and servant, so that he could not act for himself and be solely responsible for his own negligence. From all the evidence in the case, we are clearly of the opinion that David Wenrich was not liable for his son's negligence in leaving the horses in the street to the plaintiff's injury." In Herlihy v. Smith, et al., 116 Mass. 265, the master was not held liable for negligent driving where he had loaned his team to his servant for a short time to do an errand for the servant's mother.

We do not consider that the act of the master was sufficient to ratify the wrongful act of the servant when he returned over the route to ascertain if any person had been injured and the extent of those injuries. To say

that where one who is not otherwise liable becomes liable because he performs an act of charity to relieve people in distress would have a tendency to withhold, in other meritorious cases, this relief for fear of ultimate liability where none existed. What was said in Moon v. Matthews, 227 Pa. 488, is not in conflict with what we have just stated. In that case the visit to the injured person was some time after the accident and a proposition of settlement had been submitted, but these facts, as discussed by Mr. Justice POTTER, were not the controlling features of that case. A member of the defendant's family was using the car. She had directed the chauffeur to take the car, with herself and a few guests, on a trip. Clearly the car was not being used by the servant in his own business, but at the command of one who presumptively had authority to give it.

All the statements of the chauffeur made at the time the defendant came to the house with him immediately after the accident are statements that could be used without subjecting the defendant to liability. It has been decided that the facts of ownership and that the driver was the owner's chauffeur do not fix liability: Lotz v. Hanlon, 217 Pa. 339. Plaintiff must prove "that the relation of master and servant existed between the defendant and the person in charge of the car at the time of the accident, that the servant was engaged in his master's business and was acting within the scope of his employment at the time the tortious act was committed, resulting in the injury to the plaintiff. The servant must not only be engaged in and about his master's business, but must be acting within the scope of his employment in operating the machine, to impose liability upon the master": Luckett v. Reighard, 248 Pa. 24, 31. In that case the reason for the chauffeur's deviation from the direct route did not appear. He was returning the car to the garage from the owner's house. It is there pointed out what circumstances might have caused the deviation, all of which would have been within the line

of his duties. In the case at bar the purpose of the independent journey is plainly set forth. There is a fair probability that the material part of this conversation was not within the hearing of the defendant. Waiving this consideration we dó not believe this defendant was required at this time and place to enter into a denial of liability, or an explanation of the chauffeur's remarks. His purpose in going to the house was to ascertain if any person had been injured. He found the injured person and having found her, he rendered such assistance possible. The denial of the chauffeur's remarks supposedly imputing liability would not be proper or expected at this time. The primary thought was a little higher, it was the relief of the injured. We know of no rule of law which would require an owner in an emergency such as this, to be on the lookout for unauthorized statements, tending to make him liable, and if made, to immediately enter a denial, regardless of the circumstances of the visit or the probable result such denial might provoke. The words are indefinite and would not change the character of the act, the doing of which was in no sense for the owner's benefit but was for the exclusive benefit of the chauffeur. In the light of the mission on which the car was taken, the circumstances under which the remarks were made, and the words used, they would not effect more than was said in the opening of this opinion, to wit, a permission to use or a loaning of the car.

The Superior Court affirmed the judgment of the Municipal Court. Plaintiff appealed.

*Error assigned* was the judgment of the Superior Court.

*Thomas Ridgway,* for appellant.—Whether the automobile was being driven at the time of the accident on the master's business was a question for the jury to determine: Lee v. Henry (No. 1), 50 Pa. Superior Ct. 591; Bowling v. Roberts, 235 Pa. 89; Hazzard v. Car-

stairs, 244 Pa. 122; Moon v. Matthews, 227 Pa. 488; Luckett v. Reighard, 248 Pa. 24.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellee.—The evidence was uncontradicted that at the time of the accident the chauffeur was using the car for his own purposes in no way connected with his employment: Herlihy v. Smith, et al., 116 Mass. 265.

As under the whole evidence, a verdict for plaintiff could not have been sustained, binding instructions for defendant were proper: Cunningham, et al., v. Smith's Administrator, 70 Pa. 450; Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610; Schley v. Susquehanna & New York R. R. Co., 227 Pa. 494; Maynard v. Lumberman's National Bank, 20 W. N. C. 272.

OPINION BY MR. JUSTICE WALLING, March 6, 1916:

Arthur E. Shaw, the defendant, resided in Germantown and kept his automobile or car about four blocks away on the premises of Wm. E. Volz, who occasionally acted as defendant's chauffeur.

While so engaged on January 4, 1914, he drove the defendant home and then obtained his permission to take the car and bring home the chauffeur's family from where they were visiting in another part of the city. While so doing he ran down and injured the plaintiff. The occupants of the car then being the chauffeur, his wife and their four children. On hearing that an accident had occurred, defendant with the chauffeur, went to the place, admitted his ownership of the car, and that Mr. Volz was his chauffeur, took plaintiff to the hospital, and offered other assistance. There is some evidence that Mr. Volz stated in effect that defendant had sent him for his family. And, while defendant may have been present at the time, it does not appear that he ratified such statement. Mr. Volz's evidence is that defendant gave him permission to take the car; and the

testimony would not justify a finding that defendant sent Mr. Volz after the latter's family.

The trial judge directed a verdict for defendant because the proof failed to show that the chauffeur, at the time of the accident, was engaged in the master's business. This was affirmed by the Superior Court. In our opinion no error was thereby committed.

In an action to recover damages for injuries resulting from an automobile accident, it is necessary for plaintiff to prove not only that defendant was the owner of the car and that the driver was his servant, but that such servant was at the time engaged in the master's business: Lotz v. Hanlon, 217 Pa. 339; Curran v. Lorch, 243 Pa. 247; Sarver v. Mitchell, 35 Pa. Superior Ct. 69.

"He (plaintiff) must show that the relation of master and servant existed between the defendant and the person in charge of the car at the time of the accident, and that the servant was engaged in his master's business and was acting within the scope of his employment at the time the tortious act was committed resulting in the injury to the plaintiff. The servant must not only be engaged in and about his master's business, but must be acting within the scope of his employment in operating the machine, to impose liability upon the master. The test of liability is whether the servant at the time of the plaintiff's injury was acting within the scope of his authority in furtherance of his master's business": Luckett v. Reighard, 248 Pa. 24, 31.

Herein plaintiff's case fails, for at the time of the accident the chauffeur was engaged in his own business, to-wit, in the transportation of his family, a matter of no concern to defendant. And from the time the chauffeur started for his family until he arrived home with them, he was not engaged in the master's business. The location of the garage is not controlling, for the work in hand which took the chauffeur to the place of the accident was the transportation of his family, and not the putting away of the car.

In Moon v. Matthews, 227 Pa. 488, and Hazzard v. Carstairs, 244 Pa. 122, the facts are different. There in each case, the chauffeur was acting in the general line of his duty and in obedience to directions given him by a member of defendant's family, and not to serve any purpose of his own. And the rule stated in Moon v. Matthews, supra, that where the servant is operating the car in such manner as machines are usually operated, it naturally raises a presumption that he is doing so in the master's service, does not apply here, because in carrying his own family the chauffeur was employing the master's car for an unusual purpose, and the master is not liable merely because he gave the servant permission so to do.

The efforts of the owner of a car to relieve the sufferings of one injured thereby cannot be made the basis of a legal liability, unless by reason of some agreement or admission. And the declarations of the servant made after an accident are not evidence against the master unless ratified by him.

In view of the comprehensive opinion of Judge KEP-HART, we are spared further discussion.

The assignment of error is overruled and the judgment of the Superior Court is affirmed.