## Ebersole v. Becker.

*Negligence — Master and servant — Calling another to assist servant — Affidavit of defence in lieu of a demurrer.*

1. While the relation of master and servant cannot be imposed on a person without his consent, express or implied, a servant, in case of an emergency, may engage an assistant where he is unable to perform the work alone. In such a case, the question whether such an emergency existed as to authorize the servant to employ an assistant is one of fact for the jury.

2. Defendant's automobile, while occupied by him and driven by his chauffeur, ran down and injured a boy. A bystander picked up the boy, carried him into defendant's car and held him while defendant's chauffeur drove towards a hospital. The defendant remained behind. After proceeding part way, defendant's chauffeur not knowing the way, turned the physical operation of the car over to the third party and took charge of the injured boy. While so driven, the car collided with that of the plaintiff, and plaintiff sued defendant for damages resulting therefrom. Defendant filed an affidavit of defence in lieu of a demurrer, alleging that the statement did not disclose a claim against him: *Held*, that the question whether such an emergency existed as warranted the defendant's chauffeur in employing an assistant, whose action bound the defendant, was for the jury.

Trespass. Affidavit of defence in lieu of a demurrer. C. P. Berks Co., March T., 1923, No. 41.

*Snyder, Zieber & Snyder*, for plaintiff.

*John H. Bridenbaugh*, for defendant.

BIDDLE, P. J., 9th judicial district, specially presiding, June 14, 1923.—This is an action of trespass to recover from the defendant the amount of damages resulting from a collision between the car of the plaintiff and that of the defendant.

On Nov. 21, 1921, the defendant's car, then being operated by one Leroy C. Undercuffler, ran into the automobile of the plaintiff, in the City of Reading. At the time of the accident the defendant was not in the automobile, which was under the control of, while not being driven by, his regular chauffeur. Shortly before the collision between the cars of the parties, the defendant's car, which he was occupying, and which was then driven by his regular

4 D. & C.

chauffeur, struck and injured some boy. The car was stopped, and the said Leroy C. Undercuffler, who was then nearby, picked up the injured boy and got in the defendant's car, where he held the injured boy on the rear seat. The defendant left the car, and his chauffeur proceeded to drive the car towards the Reading Hospital for the purpose of taking the injured boy there. On the way to the hospital, and before arriving at the place where the collision with the plaintiff's car occurred, the defendant's chauffeur, being unacquainted with the streets and the said Undercuffler volunteering to drive, turned the physical operation of the car over to the said Undercuffler and exchanged places with him, the chauffeur holding the injured boy until the collision with the plaintiff's car, and Undercuffler continued to drive it.

The defendant has filed an affidavit of defence in lieu of demurrer, alleging that the statement, which sets out the facts above recited, does not disclose a claim against the defendant on which a judgment could be legally entered in favor of the plaintiff and against the defendant.

At the argument, the contention of the defendant was that no relation of master and servant existed between the defendant Becker and Undercuffler, who was operating the car, and that as Becker, the defendant, was admittedly not present at the time of the collision with the plaintiff's car, he cannot be held responsible for the negligence of the driver Undercuffler.

The defendant relies upon the general rule laid down in cases of automobile collisions that the plaintiff "must show that the relation of master and servant existed between the defendant and the person in charge of the car at the time of the accident, that the servant was engaged in his master's business and was acting within the scope of his employment at the time the tortious act was committed resulting in injury to the plaintiff. The servant must not only be engaged in and about his master's business, but must be acting within the scope of his employment in operating the machine to impose liability upon the master. The test of liability is whether the servant, at the time of the plaintiff's injury, was acting within the scope of his authority in furtherance of his master's business:" Luckett v. Reighard, 248 Pa. 24, 31.

The plaintiff, while admitting that Undercuffler was not a regular employee of the defendant and was not directly authorized by him to operate the car, contends that there was an implied authority on the part of the defendant's regular chauffeur to employ Undercuffler to drive the car at the time in question, and argues with much force for the application of the rule that when the master entrusts the performance of an act to a servant, he is liable for the negligence of one who, though not a servant of the master, in the presence of his servant and with his consent, negligently does an act which was entrusted to his servant.

If the rule involved were in force in Pennsylvania, we think that the statement discloses sufficient to bring this case within it. It appears that the master himself was present at the time his automobile injured the boy, and that he was present when Undercuffler, holding the boy, entered the car for the purpose of taking the injured boy to the Reading Hospital, and that defendant's regular chauffeur, under circumstances from which the defendant's consent and authority might be implied, started to drive the car for the purpose of conveying the injured boy to the hospital. There is, unquestionably, very respectable authority elsewhere for the rule for which the plaintiff contends: Ulman v. Linderman, 176 N. W. Repr. 25; Geiss v. Twin City Taxicab Co., 139 N. W. Repr. 611; 1 Thompson on Negligence (2nd ed.), § 589.

We do not think, however, that the rule in question has been accepted in Pennsylvania. For while the exact question, so far as we have been able to

find, has not been definitely ruled and passed upon, there are very strong expressions to an opposite view in a number of cases, the Supreme Court saying: "It is a rule universally recognized that the relation of master and servant cannot be imposed on a person without his consent, express or implied:" Byrne v. Pittsburgh Brewing Co., 259 Pa. 357; Kirk v. Showell, Fryer & Co., 276 Pa. 587.

But while we think that the plaintiff's statement in this case cannot be sustained on the particular ground contended for by his learned counsel, we are of the opinion, nevertheless, that it raises questions of fact sufficient to carry the case to the jury.

Admittedly, the boy referred to was injured by the defendant's car while that car was under the immediate control of the defendant, and, under our law, it was the duty of the defendant to stop and render such assistance as might be necessary, and from the averments in the statement it is a fair inference that the conveying of the boy to the hospital was a part of the assistance that was necessary, and the act of the defendant's chauffeur could, therefore, fairly be held to be in furtherance of his master's business. If the chauffeur himself had been driving the car at the time of his collision with the plaintiff's car, we think there could be no question that there would be sufficient to carry the case to the jury, and the controlling question in the present matter, and the one that may control if the case is ever submitted to a jury, will be as to the extent of the authority of the chauffeur to permit Undercuffler to undertake the driving.

We think the present question is controlled by the case of Kirk v. Showell, Fryer & Co., cited above, where the Supreme Court said: "The real matter requiring solution is the responsibility of the master for the acts of the third party, called by the servant to aid in the business of the former. If this was done by reason of some emergency, can implied authority to employ and bind be inferred? . . . Did the facts disclose such necessity as justified the servant in calling upon another for assistance to carry out the business of the master? If so, the defendant is liable, notwithstanding there was no direct employment of the third party by it. It is a rule universally recognized that the relation of master and servant cannot be imposed on a person without his consent, express or implied. It is upon the exception to this general rule, which is quite as well settled as the general rule itself, that the plaintiff relies to establish the relation of master and servant in this case. The exception is that a servant may engage an assistant in the case of an emergency where he is unable to perform the work alone: Byrne v. Pittsburgh Brewing Co., 259 Pa. 357, 361. Whether sufficient authority to employ the assistance existed under the circumstances, and if the facts showed necessity for so doing by reason of an emergency, is ordinarily a fact to be passed upon by the jury: Madara v. Shamokin & Mt. Carmel Electric Ry. Co., 192 Pa. 542."

It seems to us that the jury might find in this case that there was such an emergency as justified the chauffeur in asking or permitting Undercuffler to drive the car. While the statement does not set out the extent or seriousness of the injury to the boy who was being conveyed to the hospital, it is a matter of common knowledge that where injuries are serious, the difference of a few minutes in securing skilled attention for those injuries is often a matter of vital importance. Whether that was the case here or not will depend upon the evidence adduced at the trial, but the court cannot now say as a matter of law that the question of time in that respect was immaterial. If it was material, the jury might find that Undercuffler's familiarity with the streets and with the best and shortest road to the hospital might be of importance in

4 D. & C.

shortening the time of the trip to the hospital, and that, therefore, an emergency may have existed which justified the servant in calling upon another to carry out the business of the master.

In the view of the matter that we have at the present time, we would not be justified in holding that the statement of claim fails to set out a case that would justify a recovery against the defendant.

And now, June 14, 1923, the question of law raised by the affidavit of defence in lieu of demurrer is decided against the defendant, and he is directed to file such affidavit of defence to the averments of fact as he may desire within fifteen days from this time.

From Wellington M. Bertolet, Reading, Pa.