## Myers *v.* Strousse, Appellant.

Argued October 3, 1928.

Before Por-
TER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAW-
THROP and CUNNINGHAM, JJ.

*Louis Wagner,* and with him *Richard A. Smith* and
*Wilbur F. Whittle,* for appellant, cited: Hannis v.
Driver, 68 Pa. Superior Ct. 548; Solomon v. Common-
wealth Trust Company, 256 Pa. 55.

*H. Walter Geuther,* and with him *Walter J. Klenk,*
for appellee.

OPINION BY KELLER, J., November 21, 1928:

Plaintiff's automobile, while parked in front of his
home, 1220 West Tioga Street, Philadelphia, about
9:40 o'clock in the evening, was run into by a drunken
chauffeur driving defendant's automobile, and dam-
aged. No one but the driver was in the defendant's
car at the time of the accident. The ownership of
the car, the negligence of the driver, and his general
employment as chauffeur of the defendant were ad-
mitted, but it was denied that at the time of the ac-
cident he was engaged on the business of the owner
or acting within the scope of his employment. As the
defendant was not in the car at the time, the burden
of proving that the driver was then engaged on her
business or acting within the scope of his employment
rested on the plaintiff: Curran v. Lorch, 243 Pa. 247,

442

249. The case was tried by a judge without a jury, and resulted in a finding for the plaintiff.

The driver, Leibrandt, was called by the plaintiff and was the only witness to prove his agency for the defendant at the time of the collision. His story was as follows: He left the defendant's home on Race Street about 6:00 o'clock in the evening, after telling her husband (now dead), that he was going to the garage where the car was kept (34th and Powelton Avenue), for 'parts.' What 'parts' he went after, he did not say. The garage did not have the parts, so he went to the West Philadelphia Buick Co., near 49th and Chestnut Streets, and found it closed. He then drove six and three-quarter miles northeast-wardly to an unnamed accessories store at Broad and Tioga Streets—, not however, the North Philadelphia Buick Station—, and got the parts and put them in the car. Just why he drove that distance to that particular store, does not appear, unless it may be inferred from his subsequent conduct. After securing the parts, instead of taking the car to the garage at 34th Street and Powelton Avenue, he drove it to a restaurant in the neighborhood of 11th Street and Erie Avenue where he got something to eat and some liquor to drink. He had a couple of drinks and stayed there about an hour. He was asked the exact locality of the place, but said that was his business. Plaintiff's attorney objected to further questioning along that line and the court sustained the objection; saying he would 'eliminate' from the case, where the witness got the liquor and who was with him there. After having drunk sufficient liquor to intoxicate him, or 'dope' him, as he expressed it, he got into the car and while going west on Tioga Street collided with plaintiff's car, and then went to York Road and Germantown Avenue. What he did there or why he went there he did not say.

Defendant's liability rested on whether the evidence showed that the driver of her car was at the time of the collision engaged on her business or acting within the scope of his employment. If he was authorized by her to go to Broad and Tioga Streets for 'parts' for the car, or in good faith, in furtherance of her interests, went there after them, a slight deviation from his route in returning from the accessories store to the garage would not amount to a break in the employment such as would relieve her of liability for his negligence: Luckett v. Reighard, 248 Pa. 24, 31. Nor would a delay or deviation have that effect, if caused or reasonably accounted for by something happening to the driver in the course of his employment, such as a change of clothes after being drenched in a storm while fixing a tire on his employer's account: Blaker v. Phila. Electric Co., 60 Pa. Superior Ct. 56. But if after he completed the errand for his employer he took the car exclusively on his own business or for his own purposes, especially in a direction opposite to that where the garage was located, he would not then be engaged on her business or acting within the scope of his employment, and the defendant would not be liable for an accident happening because of his negligence while pursuing his own affairs: Hannis v. Driver, 68 Pa. Superior Ct. 548; Solomon v. Commonwealth Trust Co., 256 Pa. 55, 59; Scheel v. Shaw, 60 Pa. Superior Ct. 73; affirmed, 252 Pa. 451.

It was, therefore, incumbent on the plaintiff, in order to charge the defendant with liability, to go into the facts and circumstances fully in order that a jury, or in this instance, the judge, might be able to tell within which class of decisions the case fell. As was said by the Supreme Court in Lotz v. Hanlon, 217 Pa. 339, 341, (opinion by Mr. Justice STEWART), where the evidence showed only that the plaintiff had been run down by an automobile in a frequented street

in Philadelphia, after nightfall, and that the car was at the time occupied by four persons, one being the driver whose identity was established, and that the car was registered in the name of defendant as owner: "The jury had a right to be informed as to who these persons were, where they were going, upon what mission, at whose invitation they were occupying the automobile, and in what relation they stood to the defendant, so that they might intelligently determine the question of defendant's liability." But the circumstances so necessary to be proved in the present case, before it could be determined whether the defendant was liable or not, were not allowed to be given in evidence because of objections of plaintiff's counsel; and the trial judge misconceived the situation from a legal standpoint, when he said: "The only thing I am interested in is if he [Leibrandt] was out with this machine for the purpose of the employer's business. He states that he was. [We have already reviewed his evidence on the subject.] *Where he went after he got the parts for the machine is unimportant as far as this case is concerned.*" On the contrary, that was the important issue in the case; and the court should have permitted the defendant to go into the subject fully and compelled the witness to tell the exact place, or places, to which he went after he got the 'parts' at Broad and Tioga Streets and put them in the car; what he went there for, what he did there, how he spent the time, how many drinks he had there, who was with him, whether he met them by chance or by prearrangement, etc.

Fortunately, by referring to a city map we are able to get enough information to make the situation intelligible.

The garage where the car belonged was at 34th Street and Powelton Avenue, four and three-quarter miles southwest of Broad and Tioga Streets, where

the driver secured the 'parts.' Instead of going there he went in the opposite direction, northeastwardly, about half a mile, to a restaurant or saloon in the neighborhood of 11th Street and Erie Avenue and stayed there about an hour eating, and drinking intoxicating liquors. It was not shown that this trip had anything to do with his employer's business or was otherwise than a jaunt on his own business or pleasure. After becoming intoxicated there and while traveling west on Tioga Street, but east of Broad Street, (between 12th and 13th Streets) and therefore not within any route that he could take in going from the accessories store to the garage, he collided with plaintiff's car.

We can see no distinction between this case and Solomon v. Commonwealth Trust Co., supra. There, the chauffeur in obedience to instructions from his mistress, who lived in East Pittsburgh, took the car to a blacksmith shop for the purpose of having repairs made to it. After these were made, instead of returning the automobile to the garage, he and a companion, after taking a drink of brandy at a nearby saloon, started with the car in a direction different from that leading to the garage, and without any intention of going directly to it. They started for and went to the Allegheny River to look at its swollen waters, and did so from the Sixth Street bridge, which they crossed going over to Allegheny. While there they each took another drink. Shortly afterwards they recrossed the bridge and having returned to Pittsburgh and taken a third drink, started for the garage, on the way to which the automobile ran into a wagon. The Supreme Court said, speaking through Chief Justice Brown: "It was incumbent upon the plaintiff to show, by direct or circumstantial evidence, not only that Clay was the servant of Mrs. Reymer, but that he was on an errand for her or engaged in

her business at the time he drove the automobile into the wagon: Lotz v. Hanlon, 217 Pa. 339; Curran v. Lorch, 243 Pa. 247; Luckett v. Reighard, 248 Pa. 24; Scheel v. Shaw, 252 Pa. 451. The plaintiff failed to show what he was required to prove, while on the contrary, it affirmatively and clearly appeared that the chauffeur had started away from the repair establishment on an errand of his own, for his own pleasure. In doing so he became what is commonly called a 'joy rider' and, when he started back from his 'joy ride,' to take the automobile to the garage, he was no more on an errand for his employer than if he had originally taken the car from the garage, without permission or authority from her, and started out on an errand of his own. He would have continued in his employer's business, and she would have been liable for the consequences of his negligence, if he had started from the repair establishment to which he had been sent, with the intention of returning the automobile to the garage, even if he had deviated from the most direct route to it; but the situation as presented on the trial was totally different, and is thus well summed up in the opinion of the learned court refusing the plaintiff's motion for a new trial: 'From the facts in evidence, it was plain that he could have returned from the blacksmith shop to the garage in perhaps less than a half hour and that the trip to the North Side was in an opposite direction from the proper route after he reached Thirty-third Street, and the finding of the jury was amply justified. The journey was entirely for the chauffeur's own pleasure, and we cannot see that he had resumed his duty in this case any more than he could be said to have done so had he taken a "joy ride" to some neighboring town, and the accident had happened when he was about to enter the garage on his return.' " It is true that case was submitted to the jury, but the Supreme

Court said (p. 58) that binding instructions should have been given for the defendant.

This case differs from that one only in that the driver here admitted having taken two drinks instead of three; that he spent an hour in a saloon half a mile away instead of driving about the city; and that in this case the accident occurred before he had even retraced his journey to the point of diversion from his employer's business. Otherwise the facts are in substantial accord.

The seventh and eighth assignments of error are sustained. The judgment is reversed and is now entered for the defendant.