# Blaker *v.* Philadelphia Electric Company, Appellant.

*Negligence—Master and servant—Scope of employment—Automobile.*

In an action by a father against a corporation owning an automobile to recover damages for the death of a child and injuries to two others caused by the negligent act of the defendant's chauffeur, the question as to whether the accident happened while the chauffeur is acting within the scope of his employment is for the jury, and a verdict and judgment for plaintiff will be sustained where it appears from the uncontradicted testimony that the chauffeur was in the continuous employment of defendant, that prior to the accident he had started to return to the defendant's garage, that on his way he was compelled to stop to change his tire in the rain, that his clothes became wet, that instead of returning to the garage immediately, he drove the machine to his home in another part of the city, had his supper, changed

his clothes, and started to return to the garage where he had work to do preparatory to his employment in the morning, that on returning to the garage he went out of his way several blocks to get some cigars, and while on this mission struck the children.

Argued Oct. 21, 1914.   Appeals, Nos. 105 and 106, Oct. T., 1914, by defendant, from judgments of C. P. No. 2, Phila. Co., Sept. T., 1913, Nos. 5,898, and 599 in cases of Alton T. Blaker et al. v. Philadelphia Electric Company.   Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Affirmed.

Trespass to recover damages for the death of one of plaintiff's children and injuries to two others.   Before BARRATT, J. ·

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for Alton T. Blaker $1,000, and for the two injured children $25.00 and $65.00, respectively.   Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*R. Stuart Smith*, with him *Charles E. Morgan*, for appellant.—No inference can be drawn from the fact of ownership, or from the further fact of general employment, sufficient to support a recovery, without affirmative proof either of the fact or of circumstances justifying the inference of the fact, that the accident occurred while the automobile was being used about the business of the defendant: Lotz v. Hanlon, 217 Pa. 339; Sarver v. Mitchell, 35 Pa. Superior Ct. 69; Curran v. Lorch, 243 Pa. 247; Quigley v. Thompson, 211 Pa. 107; Durham v. Strauss, 38 Pa. Superior Ct. 620.

That there was not a mere deviation in route seems quite plain.   It was a departure from the business of the company occurring in a part of the city distinctly

different from the locality where he had been employed
during the day, and where he had no work to do for
the defendant, and occupying a considerable space of
time: Patterson v. Kates, 152 Fed. Repr. 481; Danforth
v. Fisher, 75 N. H. 111; Colwell v. Ætna Bottle &
Stopper Co., 33 R. I. 531; Northup v. Robinson, 33
R. I. 496; Symington v. Sipes, 121 Md. 313.

*Francis M. McAdams,* with him *William H. Wilson,*
for appellee, cited: Witte v. Mitchell-Lewis Motor Co.,
244 Pa. 172; Marcus v. Gimble Bros., 231 Pa. 200;
Guinney v. Hand, 153 Pa. 404; Brennan v. Merchant
& Co., 205 Pa. 258; McDonald v. Ellsworth Collieries
Co., 234 Pa. 254; Ley v. Henry, 50 Pa. Superior Ct. 591.

OPINION BY KEPHART, J., February 24, 1915:

The plaintiff seeks to recover damages for the death
of his son and for injuries to two of his other children,
all minors, caused by an automobile.  The chauffeur,
who was driving the car that caused the injury, was
regularly employed by the defendant.  On the day of the
accident, after executing various orders given, he was re-
turning at six o'clock from Columbia avenue to the garage,
where the car was kept located between twenty-seventh
and twenty-eighth streets, north of Girard avenue.  When
turning on to Girard avenue from seventeenth street he
stopped his car to repair a punctured tire, and while he
was working it was raining.  What followed, important to
the case, may be stated in the language of the chauffeur:
"Then I started to go back to the garage.  My clothes
were all wet from changing the tire in the rain, and I
hadn't had no dinner, and I knew if I went into the
garage then I would have to be there for an hour or an
hour and a half or two hours to straighten my tires
up, so I thought I would go out home and put dry
clothes on and get supper before I done that work."
In going to his home in West Philadelphia he passed
within two or three squares of the garage and con-

tinued some twenty-five squares beyond it.   After he had changed his clothing and eaten his supper, he started back to the garage.   While returning he went out of his direct way several blocks to get some cigars. In turning a corner while on this mission he struck the three boys.

Was the servant engaged in his master's business or was the trip to his home, for the purpose as stated, within the scope of his employment; or was it for his own personal convenience and comfort?   If the trip was within the scope of his employment, the return was likewise.   It is essential to a recovery in this case that it be made to appear that the accident, in which the plaintiff's sons were injured, occurred while the person in charge of the automobile was using it in the course of his employment and on his master's business: Lotz v. Hanlon, 217 Pa. 339; Curran v. Lorch, 243 Pa. 247. The test of all cases like the present one is the scope of the servant's employment.   If the accident occurred within the general scope of this authority, the presence or absence of direct authority does not affect the master's liability to the injured parties: Marcus v. Gimbel, 231 Pa. 200.   Or if the act be done within the apparent scope of the authority of the servant yet is done in violation of the master's instructions, this would not relieve the master from liability: Moon v. Matthews, 227 Pa. 488; McClung v. Dearborne, 134 Pa. 396.

The servant was in continuous employment from seven o'clock in the morning until he finished his work at the garage after supper.   His duties were general and included not only obedience to his master's directions but the supervision of the car, to keep the car, as such, in running order.   This may be taken from the chauffeur's description of what he was doing during the day and what he was required to do in the evening after supper.   But while the chauffeur or servant was on duty from seven o'clock in the morning until ten or eleven o'clock in the evening, and was, during all of that time,

under the pay of the master; there may have been intervals of time within which the master would have no immediate use for his car. It does not follow from the fact of continuous employment, that during the period of time the car was not used by the master the servant would be privileged to take the car, go upon some journey for his own purposes, and the master be responsible for negligent operation of the car. During this time he was thus using the car the relation of master and servant as to such use was suspended. It is an independent act on the part of the chauffeur as a servant and the master would not be liable for his tort committed while thus engaged: Lotz v. Hanlon, supra; Durham v. Strauss, 38 Pa. Superior Ct. 620. The expression "in the course of his employment," as used in the law of master and servant, means "while engaged in the service of the master" and is not synonymous with "during the period covered by his employment:" Slater v. Advance Thresher Co. (Minn.), 97 Minnesota, 305, 107 N. W. Repr. 133. If this case rested upon the fact of so-called continuous employment, when the car was taken to West Philadelphia for the purposes as herein indicated and these purposes were not within the scope of the servant's employment, the defendant would have a complete defense to this cause of action and its motion for a judgment n. o. v. would have been promptly sustained: Curran v. Lorch, supra. To sustain a contrary doctrine, and hold that as between the master and the person injured the master should be held responsible no matter what the nature of the servant's journey might have been, would be to hold the master as an insurer against any of the acts of the servant while he was in physical control of and engaged in driving the car. The servant, in going for his meals with his master's car, would not be within the scope of his employment; unless it was done under a contract of hiring, the usage of which or the terms of which permit the servant to discharge his duties on such terms as suited his con-

venience, or the master, with full knowledge, acquiesced in the use of the car for this purpose (or the master consented to the use of the machine to facilitate his labors in furtherance of the defendant's interests: Steffen v. McNaughton, 142 Wisconsin, 49) so that the jury might reasonably consider that it was a normal use of the car and contemplated as being a part of the compensation for the employment, therefore done within its scope; or the contract provided that meals should be furnished by the master.

In determining the scope of employment, each case must, to a great extent, stand upon its individual facts and where the evidence is such that an inference of employment may be drawn from it, the case is for the jury. "For all acts done by the servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible: Stone v. Hills, 45 Connecticut, 44:" Ritchie v. Waller, 63 Connecticut, 155.

The servant stated that it was necessary for him to go back to the garage to repair the car so, as we may reasonably infer, that it might be ready for the master's use the next day. It was seven o'clock in the evening when he had finished repairing his second puncture during the day. His clothing became wet from the rain while engaged in his master's business. To enable the chauffeur to properly attend to the duties of his master he must be in fit physical condition to perform his services. This condition of the servant is of as much concern to the master and is as much related to the business of his employment as is the repair of the car. If, in the service of the master, the servant, from the happening of an unexpected event caused by the opera-

tion of the car, is injured or placed in a position that sickness may result, in order to further continue his master's business, the use of the car in relief of that condition, that his master's business may be facilitated, is such an act arising from emergency from which scope of employment might be presumed. In the case at bar, for many reasons it was highly desirable that he should have his clothing changed. He was expected to be present at his work promptly in the morning. Time was therefore important. The master would not expect him to continue his work in the condition he has brought about, and the quickest and most expeditious way to relieve himself would be the one the chauffeur naturally took. When he went to change his clothing it was as much for the master's benefit as it was for the convenience of the servant. This, coupled with the fact that his duties required him to have the car ready for use that night, or his continuous employment, were facts fairly to be submitted to the jury from which the inference might be drawn that the work was for the master's benefit. "Where a servant is allowed by his master to combine his own business with that of the master or even to attend to both at substantially the same time, and the third person is injured by his negligence, the master will be responsible unless it clearly appears that the servant could not have been directly or indirectly serving the master in doing the act, the negligent performance of which caused the injury:" Corper Brewing and Malting Co. v. Huggins, 96 Ill. App. 144. We cannot construe an act merely incidental to the master's business and not necessarily, at the time, connected with it, as having the effect of creating this double relationship, where the business is primarily, in fact almost exclusively, the servant's business. In Lotz v. Hanlon, supra, cited by the appellant, Quigley v. Thompson, 211 Pa. 107, and Durham v. Strauss, supra, the facts were much different from those upon which this decision is predicated. In Lotz v. Hanlon, supra,

the purpose of that journey was not within the scope of the master's business; it was a pleasure trip to which the securing of the spark plugs was merely incidental. If there had been evidence that it was part of the duty of the servant to secure the spark plugs, and the securing of them was a necessary part of the trip, these facts would be more like the facts in the case at bar. A careful reading of that case convinces us there is a marked difference between the facts there presented and those upon which this case rests.

We need not dwell upon the slight deviation which was made on the return trip to get the cigars. This, under the authority of Witte v. Motor Co., 244 Pa. 172, would not relieve the master. The trip past the garage to the house in West Philadelphia, if there were no other circumstances involved, could be scarcely minimized into a deviation. It would be an entire departure and an independent journey. "Not every deviation of the servant from the strict execution of his duty, nor every disregard of particular instructions, will be such an interruption of the course of the master's business . . . . so that the servant may be said to be 'on a frolic of his own,' the master is no longer answerable for his servant's conduct: Pol. Torts, page 76. In cases of deviation the authorities are clearly to the effect that a mere deviation by the servant from the strict course of his duty, even for a purpose of his own, will not be such a deviation from the master's business as to relieve him from responsibility:" Ritchie v. Waller, 63 Conn. 155.

The assignment of error is overruled and the judgment affirmed at the cost of the appellant.