Vivino v. Nevius, Appellant.

Argued March 10, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNING-HAM, BALDRIGE and GRAFF, JJ.

*John L. Pipa, Jr.,* for appellant, cited: Rosenthal v. Philadelphia Phonograph Company, 274 Pa. 236; Harris v. Commercial Ice Co., 153 Pa. 278.

*H. F. Bonno,* and with him *Fred B. Moser,* for appellee, cited: Lamont v. Adams Express Company,

264 Pa. 17; McKenzie v. Campbell, 84 Pa. Superior Ct. 112.

OPINION BY CUNNINGHAM, J., April 18, 1930:

This appeal is by the defendant from the judgment entered upon a verdict recovered by the plaintiff in the sum of $2,500 as damages for personal injuries suffered by him when struck by an automobile owned by the defendant and driven by one Guise. It was averred in the statement, and denied in the affidavit of defense, that at the time of the accident Guise was the agent and servant, and engaged in the performance of the business, of the defendant. The trial judge submitted to the jury in a clear and adequate charge, of which no complaint is made, the questions of the negligence of the operator of the car, the contributory negligence of plaintiff, and whether the driver was engaged at the time upon the business of the defendant.

The assignments complain of the refusal by the trial judge of defendant's point for binding instructions and the subsequent overruling by the court, in banc, of his motion for judgment n. o. v.

The testimony was irreconcilably conflicting but, in view of the verdict, all the evidence and proper inferences therefrom favorable to the plaintiff must, under the familiar rule, be taken as true, and all unfavorable to him rejected: Hunter v. Pope, 289 Pa. 560, 562; Frank v. Reading Co., 297 Pa. 233.

Viewed from this standpoint, the jury could reasonably have found these facts: The accident happened on the afternoon of August 21, 1928, in the Borough of Kulpmont. Chestnut Street is one of the principal east and west streets in that borough and is intersected at right angles near the scene of the accident by Eighth Street, running north and south. A single street railway track is located in the center of Chestnut Street and there is a suspended traffic light above

the center of the intersection of Chestnut with Eighth Street. Plaintiff was driving east on the south side of Chestnut Street toward Eighth and, desiring to visit a store at or near the northwest corner of those streets, parked his car along the south curb of Chestnut approximately thirty-five feet west of Eighth and started diagonally across the cartway of Chestnut toward the store. As plaintiff parked his car the light was green, indicating "Go," for traffic on Chestnut Street but, as he stepped from his car, it changed from green to amber, indicating "Caution" and requiring, under the circumstances, the stoppage on Chestnut Street of traffic that had not already entered upon the intersection of Eighth. Upon the changing of the light from green to amber, two automobiles proceeding west on the north side of Chestnut Street between Seventh and Eighth Streets stopped on the east side of Eighth in obedience to the signal. Plaintiff's version of the accident reads: "Q. Tell the court and jury what happened. A. As soon as I got off the [car] door the light was yellow and I seen two or three cars stopped on the other side toward Mount Carmel [east]. Q. That is on the other side of the Eighth Street intersection? A. Yes, sir. I saw these two cars and I looked and I saw them two cars and I looked towards Shamokin [west] to see if anybody was coming on my back. I had to go across the street. The time I left the door, I walked a step or two and I turned my head and looked toward Mount Carmel again and I was knocked down and I could say no more."

The car of the defendant, operated by Guise, immediately prior to the happening of the accident was proceeding west on Chestnut Street in the block east of Eighth. Upon approaching the two automobiles which had stopped east of Eighth Street in obedience to the traffic signal, Guise, instead of taking his place behind them in the halted traffic, disregarded the traffic

signal and, at a speed of from twenty-five to thirty-five miles per hour, drove around them to the left, over and south of the street railway track and across Eighth Street, striking the plaintiff while he was still on the south side of the street railway track. There was therefore ample evidence of the negligence of the operator of the car. His negligence was not seriously disputed at the argument but it was contended that the trial judge should have given binding instructions in favor of the defendant because the evidence also showed (a) that plaintiff was guilty of contributory negligence as a matter of law and (b) that the operator of the car was not engaged upon the business of defendant at the time of the accident.

On the first proposition we think this case is ruled in principle by the recent case of Newman v. Protective Motor Service Co., 298 Pa. 509, and the cases there cited. In that case the plaintiffs were proceeding north on the west sidewalk of Broad Street. When they reached Pine Street, the traffic light was in their favor and against traffic on Pine Street, which is a one-way street for traffic west bound. They noticed that automobiles, in obedience to the traffic signal, had stopped on Pine Street east of Broad. Following the bidding of the traffic signal, they proceeded to cross Pine Street at the regular foot crossing and had reached a point slightly beyond the center of that street when they were struck by defendant's truck, which they had not seen and which, in disregard of the traffic signal, had passed the other stopped motor vehicles and proceeded across Broad Street and into Pine. The trial judge entered a compulsory nonsuit on the ground that appellants, after stepping into the cartway of Pine Street, did not look again to the right, the direction from which the truck approached. The Supreme Court reversed, holding that they were not bound to anticipate that the defendant's driver would disregard the traffic signal but had the right to as-

sume that he would be regardful of his duties to others on the highway. True, the plaintiff in the present case was not on the Eighth Street crossing; he was thirty-five feet west thereof and in practically the same position with respect to the crossing as was the plaintiff in the case of Rhoads v. Herbert, 298 Pa. 522, designated in the opinion of the Supreme Court as not a regular "crossing" case, nor an altogether "between crossings" case. In the Rhoads case, however, there was no traffic light at the intersection and the plaintiff was injured by a car which turned from an intersecting street into the street she was crossing; the circumstances of that accident differed materially from those present in this case.

The plaintiff here was not bound to anticipate the sudden and negligent darting of defendant's car from behind the automobiles waiting for the signal to proceed (Clark v. Horowitz, 293 Pa. 441, 445) but had a right to assume that traffic would stop and move upon the change of lights in an orderly way. Clearly it was the province of the jury to pass upon the question of plaintiff's alleged contributory negligence (Gearhart v. A. & L. Val. Electric Ry. Co., 93 Pa. Superior Ct. 503; High v. Reading Transit Co., 97 Pa. Superior Ct. 477) and defendant was not entitled to binding instructions upon this branch of the case.

Upon the other contention of defendant the testimony was to the effect that Nevius, the owner of the car, operated the American Stores at Ninth and Chestnut Streets and had instructed Guise, who frequently drove for him, to take the car from that store to the Bridy Motor Company at Mt. Carmel, several miles east of Kulpmont, for repairs to the engine, and to return it to the store. Nevius testified that the accident happened when Guise "was coming back to the store" about two and one-half hours later. On his way to Mt. Carmel Guise left the main highway at a point east of Kulpmont and drove north about

one mile to Richards Tunnel where he met a friend, Stuller, and told him he would return for him at quitting time. Guise then returned to the direct route to Mt. Carmel and proceeded to the Bridy Motor Company garage. Upon his return journey Guise again deviated from the direct route at the same point, went to Richards Tunnel, picked up Stuller, returned to the point of deviation and proceeded on the direct route toward the owner's place of business; the accident occurred while he was on the direct route and before he had reached the store. Guise stated in his direct examination that he "was going home" and "went up for Stuller." Subsequently he stated that Stuller lived on Chestnut Street several blocks west of the store and that he was taking him home at the time of the accident. The trial judge charged: "It will be for you to determine whether he was returning to the store of this defendant after having been to Mount Carmel where he had been sent by the defendant; because, if he was returning to the store of the defendant then properly he was engaged upon the business of Mr. Nevius, the defendant. If, however, you conclude that he was taking Stuller home, then he was not upon the business of this defendant, and the plaintiff cannot recover in this action." This instruction was certainly as favorable to the defendant as he could expect. Under all the testimony the question was one for the jury. From the authorities, and particularly Webb v. North Side Amusement Co., 298 Pa. 58, it is clear that a deviation, such as appeared in this case, does not as a matter of law relieve the owner of the car from responsibility. The statement of Guise with respect to his intention, standing alone, could not have this effect. His conflicting statements, together with all the surrounding circumstances, were for the consideration of the jury. There was evidence from which they could properly find that at the time of the accident Guise was on his way back to defendant's place

of business from which he had been sent on the errand by defendant and that he was still on defendant's business until he arrived there. That he may have contemplated going farther on his own, or Stuller's, affairs did not affect his agency for the defendant at the time of the occurrence. At most it could only be evidence of an intention to deviate from his master's business and use the car for his own purposes after he had arrived at the point from which he had been dispatched. Binding instructions would not have been proper upon any of the grounds urged in behalf of defendant and the assignments of error must therefore be overruled.

Judgment affirmed.