Welsh et ux. *v.* Feyka, Appellant.

Argued April 18, 1935.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Thompson Bradshaw,* of *May & Bradshaw,* for ap-
pellant.

*Richard H. West,* with him *Clyde Holt* and *Harry B. Richardson,* of *Holt, Richardson & West,* for appellees.

OPINION BY RHODES, J., July 18, 1935:

Two actions in trespass arose out of the same accident, and judgments were entered upon the verdicts. The plaintiffs, the parents of Fred Welsh, recovered a verdict against the defendant in the amount of $1,341 for the death of their son, as the result of a collision between an automobile, owned by the defendant and driven by Joseph Franck, and a motorcycle on which Fred Welsh and his brother, Ralph Welsh, were riding. Ralph Welsh recovered a verdict against the defendant in the amount of $350 for damages to his motorcycle and for personal injuries. The question which arose is the same in both cases. They were briefed and argued together. The assignments of error raise the question of the sufficiency of the evidence to show that the driver of defendant's car, at the time of the accident, was an agent of defendant and engaged in his business.

The trial judge refused to give binding instructions, at the request of the defendant, and submitted the case to the jury. The court below overruled defendant's motion for judgment n. o. v., and entered judgment in favor of the plaintiffs and against the defendant. Defendant appealed.

The question of the negligence of the driver, Joseph Franck, is not raised on this appeal.

The evidence produced at the trial relative to the question of agency shows that the defendant, Peter Feyka, conducted a garage near Darlington, Beaver County, Pennsylvania, and was in the business of selling new and used cars. Joseph Franck, the driver of the car at the time of the accident on November 22, 1933, had sold four or five cars for the defendant since 1931. Franck was regularly employed at a brick mak-

ing plant, and only sold cars for the defendant in his spare time. Whenever he had a prospective purchaser he took out one of the defendant's cars and demonstrated it; if a sale was made he received $15 commission on the sum of $300 or less, and 5% on an amount in excess of $300. In May, 1933, a quarrel arose between Franck and the defendant, as a result of which they never thereafter spoke to each other. This quarrel did not arise over the selling of cars, but over an entirely different matter.

Subsequent to May, 1933, and previous to the date of the accident, Franck had taken out cars belonging to the defendant, four or five times, for demonstration purposes; but he did not sell any during this period. On these occasions Franck arranged for the car with Steve Feyka, defendant's brother, who ran a separate repair shop of his own adjoining the garage of the defendant, and who looked after defendant's garage business when he was away. Defendant, it was testified, saw Franck take out cars subsequent to May, 1933, and made no objection to his doing so. The defendant did not deny he saw Franck take out the cars, although he did say that he told Steve Feyka never to let Franck have them.

On the day of the accident, Franck went to the defendant's garage, at about 1:30 P. M., where the defendant's car was parked. It was equipped with defendant's license plates. Franck got into the car and drove it away. He had previously told Steve Feyka that he had a prospect in Eastvale. The defendant kept the car in front of his house, which was about one-eighth of a mile from the garage, where it had been parked for about three weeks. No license plates were kept on it, but the same were kept in defendant's home. When it was necessary to place license plates on the car, and defendant was not there, Steve Feyka placed them thereon. Franck testified that the defendant was

in his garage at the time he got into the car, and that he saw him drive away and made no protest; whereas, defendant denied this, stating that he was absent from the garage that afternoon and that he did not return until two o'clock. Defendant testified that his brother, Steve Feyka, looked after and took care of his business when he was away, and that Steve Feyka had been so acting in the absence of the defendant for about two years prior to November 22, 1933.

Franck testified that he went from Darlington to Eastvale, and, finding his prospect away from home, drove across the river and visited a sick friend in a hospital in Beaver Falls. From there he went two or three miles south to the borough of New Brighton, in order to procure a part to repair his furnace, and was returning to Darlington when the accident occurred just as he was about to turn into the driveway of the Valley View Inn. He testified that he stopped there, at about 3:30 P. M., in order to make inquiry of the proprietor concerning prospective purchasers of cars. He admitted that his wife was employed there, but testified he did not go there to see her; that she did not quit work until five o'clock; and that her employer always brought her home to Darlington. He stated that he had previously talked to the proprietor about advising him of prospects, and that, previous to making the trip, he had intended to stop and see him.

Appellant contends (1) that the driver had no authority to take out the defendant's car at all, as the agency was terminated by the quarrel of May, 1933; (2) and that even if the driver had authority to demonstrate on that day, it was a limited authority to demonstrate to a designated prospect, and that, at the time of the accident, the driver had exceeded his limited authority and was not in the course of his employment.

The trial judge submitted to the jury for determination the question of whether or not, on November 22,

1933, Franck was acting as agent of Peter Feyka, and whether or not he was driving defendant's car, at the time of the accident, on the business of the defendant. The trial judge further instructed the jury that if Franck was using the car on his own business, and not on the business of the defendant, at the time of the accident, then the defendant would not be bound by what might arise from the operation of the car by Franck, under the circumstances.

We think there was sufficient evidence to submit the case to the jury on the question of Joseph Franck's authority to take out the car on the day of the accident. It was an admitted fact that Franck had acted as defendant's agent for the sale of cars for about two years prior to May, 1933. It was testified that the defendant knew Franck continued using defendant's cars, for the same purpose and under the same conditions, subsequent to May, 1933, and that he made no objection thereto; that he saw Franck take the car on the day of the accident, and made no protest; that Steve Feyka, brother of the defendant, was in charge of the defendant's business in the absence of the defendant, and had authority to place the dealer's license tags on defendant's cars; and that Steve Feyka, while in charge of defendant's garage on various occasions during his absence, supplied Franck with cars for demonstration purposes. See Zondler v. Foster Mfg. & Supply Co., 277 Pa. 98, 120 A. 705. Such testimony was sufficient to warrant the jury in finding that Franck was acting as the agent of the defendant when he took the car from the defendant's garage on November 22, 1933, the day of the accident. "One becomes an agent only if another in some way indicates to him consent that he may act on the other's account ...... The manifestation of the principal may consist of his failure to object to unauthorized conduct. This is so where, in view of the relations between the principal and agent

and all other circumstances, a reasonable person in the position of the principal knowing of unauthorized acts and not consenting to their continuance would do something to indicate his dissent. In such cases the agent may reasonably infer that the principal wishes him to continue so to act": Restatement of the Law, Agency, Vol. 1, §15, comment a, §26, comment d.

It is our opinion that the evidence warranted the jury's finding that Franck was acting within the scope of his employment at the time of the accident. He made two stops on his way back to Darlington, which were clearly for his own benefit; but the accident did not occur at either of these times. From the evidence, the jury would be justified in inferring that these deviations of Franck, although for his personal benefit, were merely incidental to the purpose of his trip. Parker v. Matheson Motor Car Co., 241 Pa. 461, 88 A. 653. Franck had been engaged in selling cars for the defendant for more than two years prior to the accident. No specific instructions appear to have been given him, during the entire period up to the time of the accident, by either the defendant himself, or by Steve Feyka who was in charge of defendant's business when he was absent.

The primary purpose for which Franck took out defendant's cars was to dispose of such cars which defendant had for sale, and receive the agreed commission for his services. For him to make such sales required knowledge of prospective purchasers. Franck was not required by the defendant, or his agent, Steve Feyka, to disclose the specific prospects whom he proposed to see; nor the means by which, or the medium through which, he obtained them. From the testimony it does not appear, during the entire period of relationship between Franck and the defendant, that Franck was limited as to the extent of his demonstrations; the time to be consumed; or the direction or route which he

was to follow in order to see these prospective purchasers and demonstrate to them. The mere fact that Franck may have chosen such time and route as would enable him, to some extent, to combine business and pleasure, was not necessarily inconsistent with the purpose for which the car was placed under his control. See Parker v. Matheson Motor Car Co., supra; Reed v. Bennett et al., 281 Pa. 332, 126 A. 764.

The testimony of Franck that he went to the Valley View Inn to see the proprietor about prospective purchasers, together with the other circumstances of the case, justified the inference by the jury that he was acting within the scope of his employment at the time of the accident. If his primary purpose and the probable result of his conduct were in the interest of the defendant, the jury might properly infer that he was acting within the scope of his employment. In the case of Petruska v. Packard Motor Car Co., 83 Pa. Superior Ct. 112, pp. 114, 115, in an opinion by Judge HENDERSON, it was held that: "It is a well established rule that where the facts are in dispute or more than one inference can be drawn therefrom, the issue whether or not the servant was acting for the defendant and within the scope of his employment is for the jury and the surrounding facts and circumstances are to be considered by the jury in this inquiry: Parker v. Matheson Car Co., 241 Pa. 461; Zondler v. Foster Mfg. & Supply Co., 277 Pa. 98; Blaker v. Phila. Electric Co., 60 Pa. Superior Ct. 56. Where the evidence is of such a character that an inference of employment may be drawn from it, the case is for the jury."

The defendant, over a long period of time under a specific agreement as to compensation, permitted Franck to take out cars for the purpose of sale. Disposal of his cars was the natural objective of the defendant in entering into this arrangement. The evidence does not show that Franck was circumscribed

and limited in his conduct to the extent alleged by the appellant.

Whether Franck was the agent of the defendant, and whether he acted within or without the scope of his employment, depends upon the facts present and the inferences to be drawn therefrom. The question was for the jury, and not for the court: Petruska v. Packard Motor Car Co., supra; Griffith v. V. A. Simrell & Son Co., 304 Pa. 165, 155 A. 299; Reed v. Bennett et al., supra; Zondler v. Foster Mfg. & Supply Co., supra.

Judgment is affirmed.