## Lindenmuth *v.* Steffy, Appellant.

510

Argued March 23, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Charles H. Weidner,* with him *Stevens & Lee,* for appellant.

*Robert I. Cottom,* with him *Matten & Matten,* for appellee.

OPINION BY WRIGHT, J., July 14, 1953:

Krick was the owner of a tractor, operated by Steffy, and trip-leased (with a trailer) to Motor Cargo, Inc. Steffy's conceded negligence caused the tractor to collide with Lindenmuth's building. A trespass action resulted in a verdict against all three defendants. Motor Cargo, Inc. has appealed from the refusal to enter judgment non obstante veredicto in its favor. We have con-

cluded that the case was properly decided by the lower court.

At the time of the collision with the building, there were cards 12 by 15 inches in size on the doors of the tractor with the name "Motor Cargo" printed thereon. Plaintiff was therefore entitled to rely on the presumption that the tractor was being used by the driver in furtherance of appellant's business: *Hartig v. American Ice Co. et al.*, 290 Pa. 21, 137 A. 867; *Sefton v. Valley Dairy Co.*, 345 Pa. 324, 28 A. 2d 313; *Murphy v. Wolverine Express, Inc. et al.*, 155 Pa. Superior Ct. 125, 38 A. 2d 511. With such a presumption, the case was for the jury unless plaintiff showed in his presentation that the vehicle was not being used in defendant's business: *Hartig v. American Ice Co. et al.*, supra; see *Gojkovic et ux. v. Wageley et al.*, 278 Pa. 488, 123 A. 466.

Plaintiff did not rely solely on the presumption but called Steffy as on cross-examination. It is appellant's contention that Steffy's uncontradicted testimony conclusively establishes that at the time of the collision (1) Steffy was on a mission of his own; (2) Steffy had substantially deviated from his charted course either for personal reasons or for Krick's benefit; and (3) Steffy was under Krick's exclusive control and direction. It will be necessary to set forth the factual situation in some detail.

Steffy had driven the tractor-trailer to Chicago delivering a load of freight to Motor Cargo's terminal there. He arrived in Chicago on a Monday night. The following Thursday the trailer was re-loaded at Motor Cargo's terminal and Steffy started to drive away. As he was leaving the yard the fifth wheel of the tractor came loose and the trailer fell off. Mechanics at the Motor Cargo garage made temporary repairs and Steffy started East with orders from Motor Cargo's dispatcher to take the load to Allentown, Pennsylvania, for delivery by the following Tuesday. Expense money for gas

and oil was given him by Motor Cargo. He stopped at Akron, Ohio, at the Motor Cargo terminal and further repairs were made to the fifth wheel and to the lights. The lights did not work properly, however, and he was halted by the Ohio police and warned about them. He parked most of the night on the Pennsylvania Turnpike because of the trouble with the lights. He left the Turnpike at Carlisle, went to Harrisburg and then to Reading, arriving in that city about 4:00 p.m. He dropped the trailer at a parking lot adjacent to Cutler's service station, drove the tractor to Krick's where he talked to Mrs. Krick, then went home, ate supper and went to bed. About 8:00 p.m. after taking a bath, shaving and dressing, he went to the service station and asked Cutler to help him fix the lights. Cutler gave him the key to a garage located in another part of the city and told him to go there and fix them. It was raining at the time and Cutler was too busy to help. Steffy drove the tractor to the garage and tried to fix the lights. He was able to repair them satisfactorily, with the exception of the turn signals. He then drove to a restaurant located near the garage—but not on the route back to the service station—arriving about 9:00 or 9:30 p.m. He ate a sandwich, talked with persons in the restaurant, and then started back toward Cutler's service station to park the tractor. While driving West on Spring Street (which was the direct route between the service station and the garage) the tractor went into a skid and crashed into the wall of Lindenmuth's building.

Where there is a conflict of testimony as to whether or not the servant was acting within the scope of his employment, the jury must decide: *Curran v. Lorch*, 243 Pa. 247, 90 A. 62. In *Mock v. Furphy et al.*, 172 Pa. Superior Ct. 226, 92 A. 2d 699, relied on by appellant, Furphy was called as on cross-examination. He testified that the truck in question was registered and licensed in his name, that he occasionally used the truck

to go between his home and work and that at the time of the accident he had finished his day's work and was on his way home. Plaintiff failed entirely to establish ownership of the vehicle by defendant Lancaster Auto Supply Company, or that Furphy was engaged on its business. This court reversed a judgment against the Company. It will be noted that the testimony was conclusively to the effect that no employer-employe relationship existed.

In the case at bar defendant Motor Cargo offered no evidence, relying solely on the testimony of Steffy. He stated that he came to Reading, rather than directly to Allentown, because the truck was overweight and Route 22 from Harrisburg to Allentown was "the hottest part in Pennsylvania for overweight trucks", and Krick might have had a fine to pay. Further, that he would not have been able to deliver the load even though he had gone on to Allentown since the terminal was closed and would not have been open until Monday. It cannot be said that taking the longer route, by way of Reading (approximately 10 miles), was such a deviation in a trip of over 750 miles as would show that the driver was using the vehicle for his own use. It does not appear that his route was mandatorily mapped out for him so as to miss Reading. He had five days in which to make the trip and, with the stop-over in Reading, would still have been able to be in Allentown on Monday—one day less than that allotted. The fact that he could spend the week-end at his home was undoubtedly a convenience for Steffy, but it cannot be said that this one factor took him outside the scope of his employment.

A slight deviation from the strict course of duty, even for a purpose of the employe, will not relieve the master from responsibility: *Blaker v. Philadelphia Electric Co.*, 60 Pa. Superior Ct. 56, 63; *Maloy v. Rosenbaum Co.*, 260 Pa. 466, 103 A. 882; see *Krajnik v. Monongahela Valley Bus Co.*, 99 Pa. Superior Ct. 120. The fact

that Steffy may have chosen such a route as would enable him to combine business and pleasure, was not necessarily inconsistent with the purpose for which the tractor-trailer was placed under his control: *Welsh et ux v. Feyka*, 119 Pa. Superior Ct. 44, 179 A. 810. By the contract of hiring and usage the driver of a tractor-trailer must discharge his duties on such terms as to eating and sleeping as suit his convenience, since the vehicle is placed in his care for periods of several days at a time. The jury could reasonably infer that Steffy's conduct was a normal use of the vehicle, contemplated as a part of the employment and done within its scope: *Blaker v. Philadelphia Electric Co.*, supra. If the employer allows the servant a discretion as to the manner in which his duty is to be performed, he must be responsible for the manner in which that discretion is exercised: *McDermott v. Consolidated Ice Co.*, 44 Pa. Superior Ct. 445.

Was the deviation from the direct route on the return trip from the service station to the garage sufficient to relieve the master of liability. We think not. See *Luckett v. Reighard*, 248 Pa. 24, 93 A. 773; *Maloy v. Rosenbaum Co.*, 260 Pa. 466, 103 A. 882. The fact that Steffy went to a restaurant only a few (it appears to have been about three) blocks from the garage, and there ate and conversed with his friends does not show such a course of action as would warrant us in saying that he was acting outside the scope of his employment: *Blaker v. Philadelphia Electric Co.*, 60 Pa. Superior Ct. 56. In any event, the accident happened after Steffy had left the restaurant and was back on Spring Street, which was the direct route from the garage to the parking lot. In *Vivino v. Nevius*, 98 Pa. Superior Ct. 574, the accident happened after the defendant's employe, driving on his master's errand, had made a personal deviation on the return trip, and had completed that deviation and was again driving on the direct route of

return to his master's place of business. This court held that at the time of the accident the employee was again engaged in his master's business.

Finally, it was proper for the jury to conclude that Steffy was acting in the interests of both Krick and Motor Cargo, and was the agent of both. Krick was getting the benefit of having his tractor and trailer rented, while Motor Cargo was getting the benefit of having its goods transported. It was for the benefit of both that he attempted to put the equipment in proper working order—something which Motor Cargo itself had twice attempted and failed to do. While it is true that the movement of the freight toward its destination had temporarily ceased, it must be realized that the trip was not a non-stop performance. The fact that Steffy stopped in Reading and discussed the trip and trouble with Mrs. Krick shows that Krick exercised some control. But there is nothing to show that the control of Motor Cargo was abandoned. It is entirely possible, under existing social and economic conditions, for two masters to have control over one servant so as to render both liable: *Siidekum v. Animal Rescue League,* 353 Pa. 408, 45 A. 2d 59.

The controlling issue as to whether or not Steffy was on the business of Motor Cargo at the time of the collision was for the jury to determine under proper instructions from the court. Judge SHANAMAN delivered an able and comprehensive charge, which has not been questioned. See *Partridge et al. v. Scott Bros., Inc.,* 306 Pa. 60, 158 A. 790. The verdict is amply supported by the evidence. We cannot agree with appellant's contention that it must be set aside as a matter of law.

Judgment affirmed.