502 A.2d 1300

Hope S. MINEO

v.

Charles D. TANCINI, J.E. Smith, Inc., Paul Kevon Mermon, and Pennsylvania Department of Transportation.

Appeal of PENNSYLVANIA DEPARTMENT OF TRANSPORTATION.

Hope S. MINEO, Appellant,

v.

Charles D. TANCINI, J.E. Smith, Inc., Paul Kevon Mermon, and Pennsylvania Department of Transportation.

Hope S. MINEO

v.

Charles D. TANCINI, J.E. Smith, Inc., Paul Kevon Mermon, and Pennsylvania Department of Transportation.

Appeal of J.E. SMITH, INC.

Hope S. MINEO

v.

Charles D. TANCINI, J.E. Smith, Inc., Paul Kevon Mermon, and Pennsylvania Department of Transportation.

Appeal of Paul Kevon MERMON.

Superior Court of Pennsylvania.

Argued March 27, 1985.

Filed Jan. 3, 1986.

118

Gary B. Gilman, Deputy Attorney Gen., Philadelphia, for Pa. Dept., appellant in No. 866 and appellee in Nos. 906, 1049 and 1050.

David S. Shrager, Philadelphia, for Mineo, appellant in No. 906 and appellee in Nos. 866, 1049 and 1050.

William H. Kinkead, III, Norristown, for Mermon, appellant in No. 1050 and appellee in Nos. 866, 906 and 1049.

Gilbert P. High, Jr., Norristown, for J.E. Smith, appellant in No. 1049 and appellee in Nos. 866, 906 and 1050.

Before SPAETH, President Judge, and JOHNSON and SHOYER *, JJ.

JOHNSON, Judge:

Hope S. Mineo, a Maryland resident, was seriously injured in a vehicular accident which occurred on Pa. Route 903 in Montgomery County on January 1, 1978 when a salt truck rammed into the rear of a station wagon in which she was a passenger. Ms. Mineo commenced an action against several defendants including Paul Mermon, the driver of the salt truck. Prior to trial an amicable settlement was reached by Ms. Mineo with one of the defendants, Charles D. Tancini.

After trial by jury Ms. Mineo was awarded $2,360,000.00 in damages. As part of its verdict the jury attributed 85% of the negligence to defendant Mermon and 15% to defendant Tancini. The jury also determined that Mermon, at the time of the accident, was in the joint employ of the two remaining defendants, J.E. Smith, Inc. and the Pennsylvania Department of Transportation (hereinafter "PennDOT"). Following the return of the jury verdict, judgment was entered in favor of Hope Mineo in the amount of $3,266,-748.97.[1]

After the appeals and cross-appeal were filed with this Court, J.E. Smith, Inc. filed a motion to reduce judgment or stay proceedings which sought to have the verdict reduced by 15% in light of the joint tort-feasor release of Charles D. Tancini, which was executed by Hope Mineo prior to trial. This motion was not opposed and, by order dated May 13, 1985, this Court remanded this question to the trial court for its consideration. On May 30, 1985 the trial court reduced the judgment from $3,266,748.97 to $2,777,273.58.

Also, prior to trial, Hope Mineo received medical payment benefits from the no-fault insurance carrier for the motor

---

* Judge SHOYER, Senior Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. This figure reflects the jury's verdict, plus delay damages, interest and costs.

vehicle in which she was a passenger at the time of the January 1, 1978 accident. No claim was made to the jury for medical expenses, but it was agreed that $100,000, representing Ms. Mineo's accrued and future medical expenses, should be added to the verdict if it were later to be determined by the trial or appellate court that inclusion of these monies would be appropriate. The trial court's March 8, 1984 opinion [*Mineo v. Tancini,* 114 Montg.Co.L.R. 16 (1984)] denied the motion to mold the verdict by the addition of $100,000 in medical expenses.

Defendants J.E. Smith, Inc., Mermon and PennDOT appealed raising collectively the following six separate issues which we must consider:

1. Did Hope Mineo settle her dispute with PennDOT prior to trial?

2. Should the jury have been instructed on the Sudden Emergency Doctrine?

3. Should the table of Hope Mineo's projected earnings have been sent out with the jury during deliberations?

4. Was the jury verdict excessive?

5. Should the verdict have been molded to limit PennDOT's liability to $250,000?

6. Should the trial judge have ruled that Mermon was solely the employee of PennDOT?

Hope Mineo in her cross-appeal seeks a double recovery for her accrued and future medical expenses.

For the following reasons we affirm.

## I. ALLEGED SETTLEMENT AGREEMENT

PennDOT initially argues that the trial court erred in denying a request to amend its new matter to include a defense of settlement and to mold the verdict to reflect a settlement with Hope Mineo in the amount of $25,000. On November 2, 1981 the trial court had dismissed PennDOT's petition to have the case settled and discontinued with respect to PennDOT. Thereafter, PennDOT, which had answered Hope Mineo's complaint prior to the alleged set-

tlement, sought leave to amend its new matter to include the affirmative defense afforded by the settlement. On September 14, 1982, following oral argument, PennDOT's petition was denied. No appeal was ever taken from the trial court's September 14, 1982 order.

■ An order of the trial court refusing to permit a defendant to assert an affirmative defense such as release or settlement is an appealable order. *Grota v. LaBoccetta,* 425 Pa. 620, 230 A.2d 206 (1967). In *Grota,* the defendants, like PennDOT in the instant case, sought the trial court's permission to amend the answers previously filed to include the affirmative defense of release based upon a prior settlement agreement. The trial court refused and an appeal was taken. The plaintiff in *Grota* attempted to have the appeal quashed on the ground that the appeal was interlocutory.

Justice Musmanno, in rejecting this contention, and speaking for the court, stated:

We cannot accept this argument. The defense sought to be injected by the amendment was an affirmative one and thus had to be pleaded, on the risk otherwise that it might be deemed to have been waived. Therefore, when the Court held that the amendment was not pleadable, the petitioners were, on that feature of the case, put out of court. From this it inevitably followed that the order below became final and appealable. In *Posternack v. American Casualty Co.,* 421 Pa. 21, 218 A.2d 350, [1966] we stated that where the new proposed defense is affirmative in character, and thus must be pleaded or be deemed to have been waived, the order of the court denying the pleading precludes proof of such defense at the time of trial and, accordingly, as to that defense the order "puts the defendant out of court."

*Id.,* 425 Pa. at 623, 230 A.2d at 207.

■ The clear holding in *Grota* was available to counsel for PennDOT in September 1982 when PennDOT failed to take an appeal. It was not enough for PennDOT to have

filed a petition for review in the Commonwealth Court when a direct appeal should have been taken. Pa.R.A.P. 903 requires that the notice of appeal "be filed within 30 days after the entry of the order from which the appeal is taken." The failure of PennDOT to have taken a direct appeal from the September 14, 1982 order rendered the doctrine of res judicata applicable and precludes vacation of this order after the time for appeal has passed. *Love v. Temple University*, 422 Pa. 30, 220 A.2d 838 (1966); *U.S. National Bank in Johnstown v. Johnson*, 321 Pa.Super. 352, 468 A.2d 515 (1983). Where a new proposed defense is affirmative in character, such as the one PennDOT sought to advance instantly, it must be pleaded or it is deemed to have been waived. The September 14, 1982 order put PennDOT out of court with respect to the proposed affirmative defense of release or settlement. This order was, therefore, appealable. PennDOT cannot now challenge the trial court's decision not to permit amendment of PennDOT's new matter since it failed to appeal from the September 14, 1982 order.[2]

## II. SUDDEN EMERGENCY DOCTRINE

The next assignment of error by PennDOT challenges the trial court's failure to instruct the jury on the application of the sudden emergency doctrine. PennDOT asserts that there was sufficient evidence of record for the jury to have determined that Mr. Mermon was confronted with "the sudden interjection of a moving object into his path of travel" at the time of the accident (*i.e.*, the station wagon in which Hope Mineo was a passenger).

Counsel for PennDOT suggested, in his opening statement to the jury, that the evidence would show that Mr. Mermon was faced with a sudden emergency situation on the evening of January 1, 1978. At trial, however, no evidence of a sudden emergency was presented. The trial

---

**2.** Because of our disposition of this issue, we take no position on the merits of PennDOT's claim that the trial court erred in denying PennDOT's motion to amend new matter and to mold the verdict to reflect the alleged settlement.

court, in its summary of Paul Mermon's recollection of the accident, stated:

Mermon stated that he could have stopped his truck within a distance of 50 to 60 feet. (N.T., Oct. 19, 1982, p. 108). Mermon further testified that he observed the station wagon carrying the plaintiff when it put its brake lights on and that he made this observation from a distance of 100 feet from the station wagon. (N.T., Oct. 19, 1982, p. 128 and N.T., Oct. 25, 1982, p. 775).

*Mineo v. Tancini*, 114 Montg.Co.L.R. 210, 218 (1984).

■ Since Mermon had a full 50 to 60 feet within which to stop after he realized that the station wagon was 100 feet away, a sudden emergency doctrine charge would have been inappropriate. On the facts of the instant case the trial court properly charged the jury on the "assured clear distance" rule which requires a driver to operate his vehicle in such a manner that he can always stop within the distance that he can clearly see—a distance that will vary according to the visibility and attending circumstances such as icy road conditions. *Fish v. Gosnell*, 316 Pa.Super. 565, 580, 463 A.2d 1042, 1050 (1983); *see also Bohner v. Stine*, 316 Pa.Super. 426, 463 A.2d 438 (1983).

Counsel for PennDOT also complains about the trial court's instruction that the jury was not to consider the doctrine of sudden emergency with respect to Mr. Mermon's actions. We find no abuse of discretion on the part of the trial court in light of the fact that PennDOT's counsel suggested, in his opening statement to the jury, that the evidence would show that "Mr. Mermon was faced with a sudden emergency situation."

### III. PROJECTED EARNINGS TABLE

PennDOT next asserts that the trial court erred in allowing a table of Hope Mineo's projected earnings to be sent out with the jury during deliberations. The table in question was contained in an October 6, 1982 letter sent to plaintiff's counsel by Ronald S. Kaiser, Ph.D., Ms. Mineo's expert witness. The table lists the projected earnings for

Hope Mineo, as a Ph.D. level psychologist, from ages 26–70 and indicates that, during this time period, she could expect to receive a total of $2,353,945.

PennDOT argues that the table contains "no more than speculative, subjective opinion testimony by plaintiff's hired expert concerning lost wages during a work life expectancy of a Ph.D. level psychologist" and suggests that the figures sent out with the jury unfairly highlighted the testimony of plaintiff's expert witness.

The table of projected earnings, which PennDOT claims was offered only for "reference of counsel," was later offered and accepted for "only so much of it as refers to figures." When the exhibit went out with the jury, the textual material in the exhibit was deleted leaving only the table for the jury's consideration. The table itself was compiled from exhibit P. 33, a report entitled "Salaries in Psychology—1982" by the American Psychological Association.

■■■ The table of projected earnings does not appear to be highly prejudicial or misleading in any way. *Cf. Lancaster Redevelopment Authority Appeal,* 425 Pa. 36, 227 A.2d 827 (1967). We do not accept PennDOT's argument that the reliability of the table is in question because only 40% of the American Psychological Association's membership responded to the survey that was used to develop the table. Moreover, the determination of what documents should go out with the jury is within the discretion of the trial judge. *Reichman v. Wallach,* 306 Pa.Super. 177, 452 A.2d 501 (1982). We find no abuse of discretion in the instant case.

■■■ Arguments are also advanced by J.E. Smith, Inc. and Paul Kevon Mermon that the trial court erred in permitting the table of projected earnings to be sent out with the jury without a cautionary instruction. This issue has been waived, however, since none of the defendants below requested a cautionary instruction from the trial court. It is not enough that the parties objected to the submission of the table of prospective earnings and raised this issue in

post-trial motions. Counsel must always give the court the opportunity to correct itself and this was not done in the instant case. *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

*Tagnani* involved a trespass action for damages arising out of the death of Elizabeth Tagnani. At trial defense counsel attempted to raise the possibility of the remarriage of the husband of the decedent. An objection to the question was promptly sustained, but there was no request for cautionary instructions. On appeal it was asserted that the mere sustaining of the objection to the improper question was inadequate to protect Tagnani's interest. However, the court, in *Tagnani*, rejected that argument and stated:

> If this asserted inadequacy had been called to the trial court's attention at the time of the occurrence, that court would have had the option of giving a cautionary instruction which could have removed any prejudice which may have resulted from the asking of the improper question. Appellee's failure to pursue further relief after the court sustained the objection justified the court in concluding that no further action with reference to that complaint was necessary.

*Id.* 493 Pa. at 375, 426 A.2d at 597. The *Tagnani* decision precludes relief when there is no request for a cautionary instruction in the trial court.

## IV. EXCESSIVENESS OF VERDICT

■ PennDOT raises an additional argument that the $2,360,000 verdict rendered by the jury was excessive. The granting or refusal of a new trial because of excessiveness of the verdict is within the discretion of the trial court. *Hall v. George*, 403 Pa. 563, 170 A.2d 367 (1961). A verdict should not be set aside unless it is so grossly excessive as to shock the court's sense of justice. *Kane v. Scranton Transit Co.*, 372 Pa. 496, 94 A.2d 560 (1953).

■ This Court, in *Kemp v. Philadelphia Transportation Company*, 239 Pa.Super. 379, 361 A.2d 362 (1976),

reviewed the various factors courts have considered in determining whether a particular verdict was excessive. We cautioned, however, that it is difficult to compare the facts of any one case with those which preceded it because each case is unique and dependent on its own special circumstances, and a court should apply only those factors which it finds to be relevant in determining whether or not the verdict was excessive. In determining whether or not a particular verdict is excessive, a court may consider the following factors, *inter alia,* as set out in *Kemp, supra:* (1) the severity of the injury; (2) whether plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the plaintiff (and, herein, the court pointed out that where the injury is manifested by broken bones, disfigurement, loss of consciousness, or other objective evidence, the courts have counted this in favor of sustaining a verdict); (3) whether the injury will affect the plaintiff permanently; (4) whether the plaintiff can continue with his or her employment; (5) the size of plaintiff's out-of-pocket expenses; and (6) the amount plaintiff demanded in the original complaint.

In the instant case Hope Mineo was the victim of a severe injury as a result of the January 1, 1978 accident. She suffered considerable pain and has undergone numerous operations on her back. She has been forced to wear several plaster casts and at time of trial was required to wear a plastic cast to protect and support her spine. She also has experienced constant pain in her lower back. Her doctor testified that as time passes her condition will worsen.

The accident has substantially impaired Hope Mineo's future earning power. At time of trial her physician limited her physical activities by recommending that she lift no more than ten pounds, not sit or stand for more than two hours without changing positions, be able to lie down for a period during the work day and not participate in rigorous sports of any kind.

We believe that the application of the *Kemp* factors to the instant case demonstrates no abuse of discretion on the part of the trial court in determining that the verdict was not excessive. Ms. Mineo's projected lost earnings, standing alone, could support such a verdict.

## V. RETROACTIVE APPLICATION OF 42 Pa.C.S. § 8528.

PennDOT next argues that the trial court should mold the verdict to $250,000 against PennDOT and deny Hope Mineo's request for delay damages. This contention is based upon a 1980 statute which limits the potential liability of the Commonwealth, 42 Pa.C.S. § 8528. This statute provides in pertinent part:

(a) **General rule.**—Actions for which damages are limited by reference to this subchapter shall be limited as set forth in this section.

(b) **Amount recoverable.**—Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate.

This argument has no merit, however, since a cause of action which arises prior to the effective date of this section is not subject to its limitations. *Ehehalt v. Nyari O'Dette, Inc.*, 85 Pa.Commw. 94, 481 A.2d 365 (1984); *Richardson v. LaBuz*, 81 Pa.Commw. 436, 474 A.2d 1181 (1984). Instantly, the cause of action arose on January 1, 1978 and 42 Pa.C.S. § 8528 did not become effective until December 4, 1980.

## VI. MERMON'S EMPLOYMENT STATUS

Having disposed of each of the arguments raised by PennDOT and Paul Kevon Mermon as Appellants, we now turn to the remaining issues raised by J.E. Smith, Inc. on appeal. J.E. Smith, Inc. asserts that the trial judge should have ruled as a matter of law that Paul Kevon Mermon was the employee solely of PennDOT at the time of the accident

on January 1, 1978. Both PennDOT and Hope Mineo disagree.

The jury, by its verdict and response to special interrogatories, found causal negligence on the part of the truck driver, Mr. Mermon. It further determined that Mermon was, at the time of the accident, in the employment of both Smith and PennDOT in the respect that both parties retained the right to control his conduct at the time of the occurrence.

J.E. Smith, Inc. was in the trucking business and, during the winter season, in the snow removal business as well. At the time of the accident Mermon was in the general employ of Smith, but both Mermon and the vehicle he was driving were under lease to PennDOT and PennDOT's employees had the right to control the manner in which Mermon performed his duties.

██ Under Section 226 of the Restatement of Agency, Second:

A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other.

See Coleman v. Board of Education of School District, 477 Pa. 414, 422–23, 383 A.2d 1275, 1279 (1978). Not only can a person be the servant of two masters, but both of those masters can be held liable for the conduct of the servant under appropriate circumstances. Franceschino v. Mack, 174 Pa.Super. 518, 102 A.2d 217 (1954); Lindenmuth v. Steffy, 173 Pa.Super. 509, 98 A.2d 242 (1953); Stephanelli v. Yuhas, 135 Pa.Super. 573, 7 A.2d 124 (1939).

██ Under the facts of record in the instant case, we cannot say as a matter of law that Mermon, who was driving J.E. Smith, Inc.'s dump truck at the time of the accident, was solely an employee of PennDOT.

## VII. JOINT TORT–FEASOR RELEASE

The Appellant's brief filed by J.E. Smith, Inc. asserts that the trial judge should have molded the verdict in order to

reduce the amount of the verdict against all defendants other than Charles D. Tancini by virtue of the joint tort-feasor release executed prior to trial. We need not deal with this issue as it has been resolved by the trial court in its order of May 30, 1985.

## VIII. DOUBLE RECOVERY FOR MEDICAL EXPENSES

The final issue which we must address was raised by Hope Mineo in her cross-appeal. She complains that the trial court erred in denying her motion to mold the verdict and add $100,000 representing her accrued and future medical expenses plus delay damages thereon.

Prior to trial Hope Mineo had already received payment for incurred medical expenses from the no-fault carrier for Anthony Cafara. Now, in effect, Ms. Mineo is asking us to reverse the trial court and award her a second recovery for her incurred and anticipated medical expenses. Section 201(a) of the recently repealed Pennsylvania No-fault Motor Vehicle Act[3] provided:

If the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act.

Since Hope Mineo was a resident of Maryland at the time of the accident, we must also consider Section 110(c)(1) and (c)(2) of the Act which dealt with interstate travel. Those sections provided:

(1) The basic loss benefits available to any victim ... shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect ..., then basic loss benefits available to any victim shall be determined pur-

3. Act of July 19, 1974, P.L. 489, No. 176, repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984; 40 P.S. § 1009.101 et seq.

suant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

(2) The right of a victim ... to sue in tort shall be determined by the law of the state of domicile of such victim.....

Because Maryland is a state where there is no state no-fault plan in effect, we must look to Pennsylvania law to determine if Hope Mineo is entitled to a double recovery even though we look to the state of Maryland to determine whether Hope Mineo can sue in tort. Just because Hope Mineo has the right to bring a tort action in the instant case under Maryland law according to Section 110(c)(2), that does not mean that this Court is bound by Maryland law regarding Hope Mineo's right to such basic loss benefits. That determination must be made under Pennsylvania law according to Section 110(c)(1).

In the case of *Toter v. Knight*, 278 Pa.Super. 547, 420 A.2d 676 (1980) this Court held that the right of a non-resident to sue in tort was determined by the law of the state in which the victim was domiciled. In *Toter*, the $200.00 threshold under the New Jersey no-fault act was found applicable to a suit brought in Pennsylvania by a New Jersey domiciliary injured in Pennsylvania rather than the $750.00 threshold applicable under the Act. Therefore, the right to sue in tort is determined by the victim's home state law. Under *Toter*, the victim's expectations are fulfilled and the victim has not been penalized for interstate travel. The holding of *Toter v. Knight* only determined which state's no-fault threshold would apply to limit a victim's right to sue in both states. It does not address the extent of the recovery.[4] Only an interpretation of Section 110(c)(2) of the Act was necessary to the opinion, and the result was consistent with this Court's prior result in *Dubose v. McCoy*, 277 Pa.Super. 149, 419 A.2d 705 (1980).

**4.** The limited holding in *Toter* has been acknowledged by this Court in *Miller v. Gay*, 323 Pa.Super. 466, 472–73 n. 7, 470 A.2d 1353, 1356 n. 7 (1983) and by Judge Spaeth, the author of *Toter*, in his dissent in *Miller v. Gay, supra*, 323 Pa.Superior Ct. at 475, 470 A.2d at 1357.

Neither *Toter v. Knight,* nor *Dubose v. McCoy,* addressed the question presented here of whether the non-resident victim is entitled to double recovery of medical expenses. In his majority opinion in *Toter,* Judge Spaeth intimates that a non-resident "may receive liberal treatment" by receiving Pennsylvania no-fault benefits and yet *retain the right* to sue in tort. However, Judge Spaeth's opinion does not endorse, or even suggest, that such a non-resident should be *entitled* to double recovery of medical expenses. Further, in *Toter* he examined the New Jersey no-fault scheme, not Maryland's statutory plan.

The question of whether the non-resident victim is entitled to double recovery of medical expenses has recently been addressed by Judge Mencer of the U.S. District Court for the Western District of Pennsylvania in *Gyulay v. Aiuppy,* 603 F.Supp. 1156 (W.D.Pa.1985).

Under the facts in *Gyulay:*

[t]he plaintiffs, Ohio residents, brought suit against the defendant, a Pennsylvania resident, to recover damages for injuries sustained by them in a motor vehicle accident which occurred on March 26, 1982, in Crawford County, Pennsylvania. The plaintiffs alleged negligence on the defendant's part in the operation of her vehicle. The accident occurred at a time when Pennsylvania, but not Ohio, had a no-fault motor vehicle insurance act in effect. 40 P.S. § 1009.101 et seq. (1984–85 Supp.) The plaintiffs made claims for and received benefits pursuant to the Pennsylvania act from the Ohio Casualty Group for medical expenses and work loss.

*Id.* at 1157.

After giving deference to the views expressed by this Court in *Toter,* the District Court held that plaintiff can recover under both the Pennsylvania No-fault Act and Ohio law. Judge Mencer specifically limited his holding by addressing the question of double recovery in the following manner:

However, the plaintiffs are not entitled to a double recovery. The plaintiffs have chosen to take their as-

sured basic loss benefits, which are payable regardless of fault, under the Pennsylvania No-fault Act. Having made this choice, the plaintiffs should not be able to recover the amounts paid under the Act a second time in their tort action, even though they have the right to bring this tort action under Ohio law. *Flowers v. Smith*, 12 Pa.D. & C.3d 434 (1979). The plaintiffs, having received the benefit of the Pennsylvania No-fault Act, have no right to the benefits of a second recovery of those amounts from the defendant.

*Gyulay, supra* at 1158.

■ We concur with Judge Mencer's analysis and hold that a nonresident, who has already received payment for medical expenses under the now repealed Pennsylvania No-fault Act, is precluded from securing a second recovery for those same medical expenses when suit is brought pursuant to Section 110(c)(2) of this Act. We believe that the trial court properly denied Hope Mineo's motion to mold the verdict by the addition of $100,000 in medical expenses.

The judgment entered on March 16, 1984 as modified by the trial court's order of May 30, 1985 is affirmed.

SPAETH, President Judge files a concurring opinion.

SPAETH, President Judge, concurring:

I join in Parts I through VII of the majority's opinion. I agree with the result reached by the majority in Part VIII.

With respect to Part VIII of the majority's opinion: The majority states that "a non-resident, who has already received payment for medical expenses under the now repealed Pennsylvania No-Fault Acts, is precluded from securing a second recovery for those same benefits when suit is brought pursuant to Section 110(c)(2) of this Act." Majority op. at 132. This statement, I suggest, is *dictum* because unnecessary to our decision, and is in error.

The legislature recognized that when a non-resident victim of an automobile accident brings suit in Pennsylvania, one of two situations will arise: the victim's own state

either does or does not have its own no-fault act. Section 110(c) was enacted in anticipation of these situations. If the victim's own state has a no-fault act, then the victim may not recover benefits under the Pennsylvania no-fault act but may recover only under the no-fault act of the victim's own state. If, however, the victim's own state does not have a no-fault act, then the victim may recover benefits under the Pennsylvania no-fault act. 40 P.S. § 1009.-110(c)(1); *Toter v. Knight*, 278 Pa.Super. 547, 420 A.2d 676 (1980). Here, the victim's own state, Maryland, does not have a no-fault act. *See Ropka, et al. v. Government Employees Insurance Co.*, 347 Pa.Super. 507, 500 A.2d 1171 (1985). Accordingly, the victim is entitled to recover, and she has recovered, benefits under the Pennsylvania no-fault act.

The victim is not, however, entitled to recover those benefits twice—once under the no-fault act and once as part of his damages for trespass. This is settled if the victim is a resident of Pennsylvania. 40 P.S. § 1009.301. The fact that here the victim is a resident of Maryland does not alter this conclusion. Section 110(c)(2) provides that "[t]he right of a victim ... to sue in tort shall be determined by the law of the state of domicile of such victim." Here, looking to Maryland law, one sees that the victim does have a right to sue in tort—in other words, Maryland does not have a no-fault act extinguishing her right to sue in tort. *Cf. Toter v. Knight, supra* (New Jersey resident allowed to sue in tort in Pennsylvania because under New Jersey no-fault act, resident's right to sue in tort was not extinguished, although if Pennsylvania's no-fault act were applicable, it would be extinguished). The fact that the victim was therefore entitled to maintain her action in Pennsylvania, however, does not by itself entitle her to recover double damages in Pennsylvania. To provide that one may maintain an action in Pennsylvania is not to say that in that action one may recover double damages. Since under Pennsylvania law double damages may not be recovered, the

134

trial court properly refused to mold the verdict to permit such recovery.

Appellee argues, however, that had she brought her action in Maryland, she would have been able to recover double damages, and that therefore she should be able to recover them in her action in Pennsylvania. However, she did not bring her action in Maryland. If she had, the Maryland court might, or might not, have permitted her to recover double damages. In *Toter*, we said that if the victim's state did permit recovery of double damages, that was not precluded by the Pennsylvania no-fault act. I believe this statement was correct.